MORSE/DIESEL, INC., Plaintiff,

v.

TRINITY INDUSTRIES, INC. and Mosher Steel Co., Defendants.

TRINITY INDUSTRIES, INC., Counterclaimant,

v.

MORSE/DIESEL, INC., Counterclaim-Defendant.

TRINITY INDUSTRIES, INC., Third-party Plaintiff,

v.

JOHN PORTMAN ASSOCIATES, INC., Weidlinger Associates, Inc., Helena Erectors, Inc., St. Lawrence Cement Co., A.J. McNulty & Co., Inc. and Blakeslee Prestress, Inc., Third-party Defendants.

HELENA ERECTORS, INC., Third-party Defendant,

v.

TRINITY INDUSTRIES, INC., Third-party Plaintiff.

HELENA ERECTORS, INC., Third-party Defendant,

v.

MORSE/DIESEL, INC., Plaintiff.

HELENA ERECTORS, INC., Cross-claimant,

v.

BLAKESLEE PRESTRESS, INC., John Portman Associates, Inc., Weidlinger Associates, Inc., St. Lawrence Cement Co., Inc., and A.J. McNulty, Inc., Cross-claim Defendants.

JOHN PORTMAN ASSOCIATES, INC., Third-party Defendant,

v.

TRINITY INDUSTRIES, INC., Third-party Defendant.

JOHN PORTMAN ASSOCIATES, INC., Cross-Claimant,

v.

· HELENA ERECTORS, INC., Cross-claim Defendant.

HELENA ERECTORS, INC., Plaintiff,

v.

TRINITY INDUSTRIES, INC. and
Aetna Insurance Co., Defendants.

TRINITY INDUSTRIES, INC.,
Counterclaimant,

v.

HELENA ERECTORS, INC.,
Counterclaim-Defendant.

TRINITY INDUSTRIES, INC.,
Third-party Plaintiff,

v.

MORSE/DIESEL, INC., John Portman
Associates, Inc., Weidlinger Associates,
Inc., St. Lawrence Cement Co., A.J.
McNulty, Inc. and Blakeslee Prestress,
Inc., Third-party Defendants.

HELENA ERECTORS, INCORPORAT-
ED, Counterclaim-Defendant,

v.

MORSE/DIESEL, INC., Blakeslee Pre-
stress, Inc., John Portman Associates,
Inc., Weidlinger Associates, Inc., St.
Lawrence Cement Co., Inc. and A.J.
McNulty & Co., Inc., Third-party De-
fendants.

Nos. 84 Civ. 5791 (SWK), 84 Civ.
6103 (SWK).

United States District Court,
S.D. New York.

March 7, 1987.

Hynes, Diamond & Reidy, P.C., New York City by James H. Reidy, for Morse/Diesel, Inc.

Skadden, Arps, Slate, Meagher & Flom, New York City by Henry P. Wasserstein, Steven J. Kolleeny, for Trinity Industries, Inc.

Hart & Hume, New York City by Cecil Holland, Jr., Thomas Fenerty, for Helena Erectors, Inc.

Peckar & Abramson, New York City by Robert A. Drucker, for A.J. McNulty & Co., Inc. and Blakeslee Prestress, Inc.

McGuire & Tiernan, New York City by Harold F. McGuire, Jr., Heron Burchette, Ruckert & Rothwell, Washington, D.C., for St. Lawrence Cement Co.

Shea & Gould, New York City by Kenneth H. Lazaruk, for Weidlinger Associates, Inc.

Milbank, Tweed, Hadley & McCloy, New York City by Adlai S. Hardin, Jr., for John Portman Associates, Inc.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

These cases arise out of the construction of the Times Square Hotel in New York City. Pursuant to a subcontract with Morse/Diesel ("Morse"), the general contractor, Mosher Steel Company (which later merged with Trinity Industries, Inc. and which will hereafter be referred to as Trinity) was the structural steel fabricator and erector subcontractor and installed concrete plank and metal deck. Pursuant to a sub-subcontract with Trinity, Helena Erectors, Inc. ("Helena") was the steel erector subcontractor. John Portman Associates, Inc. ("Portman") was hired by the owner of the property to be the architect. Weidlinger Associates, Inc. ("Weidlinger") was in turn hired by Portman as the structural engineer. Pursuant to separate subcontracts with Morse, Blakeslee Prestress, Inc. ("Blakeslee") manufactured and shipped prestressed concrete planks, St. Lawrence Cement Co. ("St. Lawrence") fabricated precast concrete panels and designed steel connector clips used to attach the panels, and A.J. McNulty and Co., Inc. ("McNulty") installed the concrete panels.

## I. THE VARIOUS CLAIMS

In Morse/Diesel v. Trinity, 84 Civ. 5791 (hereinafter referred to as "Morse/Diesel"), Morse claims that Trinity breached its subcontract by failing to complete its work in a timely manner, completing other work in a defective manner, and failing to pay for work performed by others. In Helena Erectors v. Trinity, 84 Civ. 6103 (hereinafter referred to as "Helena Erectors"), Helena claims that Trinity failed to perform its obligations by, inter alia, failing to deliver structural steel in a timely manner, delivering nonconforming structural steel, failing to coordinate Helena's work with that of other subcontractors, and failing to provide Helena with accurate drawings and specifications.

Trinity, in turn, filed counterclaims against Morse in Morse/Diesel and Helena in Helena Erectors for contract damages and contribution or indemnification for such portions of any recovery by Morse as was caused by Helena and vice versa. Trinity also asserted claims for unjust enrichment against Helena in both actions. Trinity also filed a third-party action in Morse/Diesel against Portman, Weidlinger, Helena, St. Lawrence, McNulty, and Blakeslee (the "third-party defendants") and in Helena against the same parties with the exception of Helena, which was exchanged for Morse. Trinity asserts negligence claims against all the third-party defendants, and seeks indemnity or contribution from them for any liability it has to Morse or Helena that was due to their negligence.

Finally, in Morse/Diesel, Helena filed counterclaims against Trinity, a claim against Morse for negligence and contribution, and cross-claims against Blakeslee, Portman, and Weidlinger for negligence and contribution and against St. Lawrence and McNulty for negligence. In Helena, Helena brings the same claim against the same third-parties with the exception of Trinity, who is the defendant. This case is presently before the Court on various parties' motions to dismiss.

## II. SUBJECT MATTER JURISDICTION

All the claims in Morse/Diesel and Helena are predicated on New York State law. Thus, diversity of citizenship is the only basis for federal court jurisdiction. Diversity of citizenship exists between parties asserting claims against each other with two exceptions in each case. In Morse/Diesel, third-party defendant Hel-

ena, a New York corporation with its principal place of business in New York, brings a cross-claim against third-party defendant McNulty (New York/New York) and three claims against plaintiff Morse/Diesel (Delaware/New York). In *Helena*, plaintiff Helena, in its answer to Trinity's counterclaims, brings claims against third-party defendants Morse and McNulty. The Court, on its own initiative, asked the implicated parties to brief the issue of the Court's ancillary jurisdiction to adjudicate these claims.

■■■ Ancillary jurisdiction allows a federal court to hear claims asserted after the complaint is filed which lack an independent basis of federal jurisdiction provided the court has jurisdiction over the complaint. *See Harris v. Steinem*, 571 F.2d 119, 122 n. 7 (2d Cir.1978). Thus, a court has ancillary jurisdiction over a cross-claim asserted by a defendant against a co-defendant already properly before the court even if there is no independent jurisdictional basis for the cross-claim. *Shields v. Consolidated Rail Corp.*, 530 F.Supp. 400, 401–02 (S.D.N.Y.1981). Ancillary jurisdiction does not, however, empower a federal court to create jurisdiction for a plaintiff's principal claim against a non-diverse defendant. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Shields*, 530 F.Supp. at 402. Furthermore, ancillary jurisdiction exists only when the claim arises out of a common nucleus of operative facts of and bears a logical relationship to the allegations of the complaint, and the assumption of jurisdictions would further the policies of judicial economy, convenience, and fairness to litigants. *Stamford Board of Education v. Stamford Education Association*, 697 F.2d 70, 72 (2d Cir.1982). *See The Travelers Insurance Co. v. The First National Bank of Shreveport*, 675 F.2d 633 (5th Cir.1982).

All the claims involved arise from and are logically related to the same transaction or occurrence in the relevant complaints—the delays in the construction of the Hotel. Judicial efficiency and convenience to the parties will be served by hearing the claims in one forum. The only issue is thus whether the claims are raised in the proper procedural posture.

### A. *Jurisdiction in Morse/Diesel*

#### 1. *Helena's claim against McNulty*

■■■ A third-party defendant's cross-claims against a third-party defendant are within a court's ancillary jurisdiction. Thus, the Court has jurisdiction over third-party defendant Helena's cross-claim against third-party defendant McNulty.

#### 2. *Helena's claims against Morse*

■■■ Third-party defendant Helena brings claims against plaintiff Morse for negligence and for contribution for any liability Helena owes to Trinity. Even though Helena is bringing claims not against a co-defendant or third-party defendant but against the plaintiff, the principles underlying ancillary jurisdiction allow the Court to take jurisdiction over this claim. Helena was brought into court against its own will, and seeks to have its rights adjudicated consistently, in one forum. There is no danger of collusively created jurisdiction, as Helena is a third-party defendant far distant from plaintiff Morse. Finally, the claim that Helena brings against Morse is essentially a third-party complaint. *See* Fed.R.Civ.P. 14(a). Such actions are subject to ancillary jurisdiction. *Owen*, 437 U.S. at 376, n. 18, 98 S.Ct. at 2403, n. 18.

### B. *Jurisdiction in Helena*

■■■ Plaintiff Helena, in answering Trinity's counterclaims, brings claims against non-diverse third-party defendants Morse and McNulty. Although *Owen* prevents a plaintiff from raising a new claim against a third-party defendant, Helena's claims against Morse and McNulty arise out of counterclaims brought against it by Trinity. Helena is thus essentially bringing a third-party complaint against Morse and McNulty, and ancillary jurisdiction exists over such claims. *Brown Caldwell v. Institute for Energy Funding, Ltd.*, 617 F.Supp. 649, 650–51 (C.D.Cal.1985); *see Finkle v. Gulf and Western Manufactur-*

*ing,* 744 F.2d 1015, 1019 (3d Cir.1984) (compulsory counterclaims by plaintiff).

## III. THE MOTIONS TO DISMISS

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, and must accept its allegations as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). The court must also accept reasonable inferences from those facts in plaintiff's favor. *See Murray v. City of Milford,* 380 F.2d 468, 470 (2d Cir.1967). Dismissal should not be granted for mere technical defects or ambiguities. *See Arfons v. E.I. Du Pont de Nemours & Co.,* 261 F.2d 434, 435 (2d Cir.1958); *Nagler v. Admiral Corp.,* 248 F.2d 319, 322 (2d Cir.1957). The test is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his favor, the complaint states any valid claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See Clay v. Martin,* 509 F.2d 109, 112 (2d Cir.1975); *Bishop v. Stoneman,* 508 F.2d 1224, 1225 (2d Cir. 1974); *Williams v. Vincent,* 508 F.2d 541, 543 (2d Cir.1974). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim that would entitle him to relief. *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). With these principles in mind, the Court turns to the motions.

### A. HELENA'S MOTION TO DISMISS TRINITY'S CLAIM

Helena moves, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c), to dismiss Trinity's claims for unjust enrichment in both *Morse/Diesel* and *Helena Erectors.* Trinity's claim is set forth as follows:

... During the period of time commencing in or about April 1984 until the present, Trinity has paid Helena at least $218,974 for Premium Time Invoices sent by Helena for expenses purportedly incurred due to obstruction or delay.

... Trinity had no obligation to pay the foregoing amount to Helena.

... Mosher paid the Premium Time Invoices as part of its good faith efforts to maintain the construction schedule for the Times Square Hotel and to prevent Helena from abandoning its performance under the Steel Erection Sub-subcontract.

... As a result of the foregoing payments to Helena on Premium Time Invoices, Trinity has sustained damages in the amount of at least $218,974.

In order to recover for unjust enrichment, a plaintiff must show that: 1) defendant was enriched; 2) the enrichment was at plaintiff's expense; and 3) the circumstances were such that equity and good conscience require defendant to make restitution. *The Chase Manhattan Bank v. Banque Intra S.A.,* 274 F.Supp. 496, 499 (S.D.N.Y.1967). Helena concedes that Trinity's allegations satisfy the first two elements.

The Court finds that Trinity has also pleaded facts that, if true, would entitle Trinity to restitution. Trinity alleges that it was not obliged to pay a premium to Helena, but that it did so to guarantee Helena's continued performance on the project. Trinity's allegations can be read to assert that, if it had not paid the premium, Helena would have wrongfully abandoned the job. If this were true, equity and good conscience would mandate recovery.

### B. OTHER MOTIONS TO DISMISS TRINITY'S CLAIMS

Morse moves to dismiss Trinity's claims for contribution or indemnity in *Morse/Diesel* and *Helena Erectors.* Weidlinger, St. Lawrence, Blakeslee, McNulty, and Portman each move to have all Trinity's claims against them in both actions dismissed.

#### 1. *Negligence Claims*

Trinity argues that it states claims against Weidlinger, Portman, St. Lawrence

and McNulty for negligence and negligent misrepresentation.

### a. *Negligent Misrepresentation*

In order to recover on a claim of negligent misrepresentation, a plaintiff must show:

carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage ..., but such information is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, to one whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all.... [citations omitted]

*White v. Guarente*, 43 N.Y.2d 356, 363, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977); *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (quoting *White*).

### i. *Reliance on Alleged Misrepresentation*

■ McNulty argues that Trinity's claim for negligent misrepresentation should be dismissed as to it because Trinity alleges that Morse, and not Trinity, relied on McNulty's representations. In its third-party complaint, Trinity alleges that:

... McNulty installed the precast concrete panels that were used for the exterior surface of the Times Square Hotel. In order to attach the precast concrete panels to the steel structure of the Times Square Hotel, McNulty used the steel connector clips fabricated and installed by Mosher.

... Prior to commencing the attachment of the precast concrete panels to the steel structure, McNulty negligently surveyed the steel structure and advised Morse/Diesel that the placement of the steel connector clips was improper and that it was therefore unable to install the precast concrete panels.

... Trinity was then required to retain another firm to survey each floor of the steel structure and the placement of the steel connector clips.

... The survey performed by [Trinity's] surveyor demonstrated that the McNulty survey was erroneous in that it utilized an improper benchmark as its basis ...

McNulty argues that since the complaint alleges that McNulty advised Morse of the results of the survey, and Morse directed Trinity to commission a new survey, Trinity's complaint fails properly to allege reliance.

While Trinity does not use the word "rely", it does plead facts which can be construed as indicating it relied on McNulty's alleged misrepresentations. Trinity alleges a close working relationship between it, McNulty, and Morse. All three parties were involved in the installation of the concrete panels. In fact, based on the pleadings, Trinity was involved more directly than Morse in the installation of the concrete panels. Thus, although the contractual chain of communications might have been from McNulty to Morse to Trinity, Trinity did rely on McNulty's survey in that Trinity had a stake in McNulty's careful preparation of the survey. Trinity claims that in reliance on the inaccurate survey, it had to commission another survey. Based on this, it has sufficiently alleged that it relied on McNulty's alleged misrepresentations.

### ii. *Direct Misrepresentations*

■ McNulty, Portman and Weidlinger argue that Trinity also fails to allege that McNulty's misrepresentations were made directly to Trinity. The requirement that the alleged misrepresentations be "expressed directly, with knowledge or notice that [they would be] acted upon," *White*, 43 N.Y.2d at 363, 401 N.Y.S.2d 474, 372 N.E.2d 315, has been "thought to pose the most formidable barrier to the plaintiff" in actions for negligent misrepresentation. *Mallis*, 615 F.2d at 82. A plaintiff may satisfy this element by pleading it is a member of "a settled and particularized class among the members of which the [survey report] would be circulated for [a] specific purpose...." *White*, 43 N.Y.2d at 363, 401 N.Y.S.2d 474, 372 N.E.2d 315; *Mallis*, 615 F.2d at 82. Trinity's allegations that McNulty was to install precast

concrete planks using steel connector clips fabricated and installed by McNulty, that McNulty negligently surveyed the placement of those clips and concluded that they were misplaced, and that as a result Morse ordered Trinity to commission a new survey, are sufficient to satisfy this requirement. *See Zampatori v. United Parcel Service,* 125 Misc.2d 405, 479 N.Y.S.2d 470 (Sup.Ct. Monroe Co. 1984) (direct representation element satisfied when detective agency communicated lie detector test results to defendant, who relied on them to plaintiff's detriment).

▮▮▮ Trinity alleges in its third-party complaint that "Portman and Weidlinger, as architect and structural engineer, respectively, of the Times Square Hotel, prepared the plans, drawings and specifications which were utilized by Trinity in connection with its bid for the structural steel subcontract...." Trinity alleges that these plans were negligently prepared. This pleading sufficiently alleges a direct misrepresentation.

### iii. *Imparting words*

▮▮▮ St. Lawrence argues that Trinity does not state a claim against it because Trinity fails to allege that St. Lawrence provided Trinity or anybody else with information. Trinity's third party complaint states:

> St. Lawrence was negligent in that it failed and refused to supply the plans, drawings and specifications for the steel connector clips for the precast concrete panels in a timely manner.

Trinity does not claim that St. Lawrence was negligent in preparing the plans or prepared them inaccurately. Rather, it claims that St. Lawrence did not supply the plans in a timely manner. In the absence of a claim that St. Lawrence imparted words, Trinity's claim against St. Lawrence for negligent misrepresentation is dismissed without prejudice to amend.

### iv. *Duty To Act With Care*

▮▮▮ Weidlinger and Portman argue that since Trinity does not allege they were in contractual privity with Trinity they have no duty to Trinity to impart information with care. In *White, supra,* the New York Court of Appeals stated that the duty to act with care arises "out of contract or otherwise...." *Id.* 43 N.Y.2d at 363, 401 N.Y.S.2d 474, 372 N.E.2d 315. This led the Second Circuit, in *Mallis,* 615 F.2d at 83, to predict that the New York courts would adopt the rule of the Restatement (2d) of Torts § 552 (1977), which is that a duty to impart accurate information arises if a person in the course of his business supplies information for the guidance of others and those others justifiably rely on it. *See Mathis v. Yondata,* 125 Misc.2d 383, 388 (Sup.Ct. Monroe Co. 1984) (citing the Restatement).

In *Credit Alliance v. Arthur Andersen,* 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), the Court of Appeals ruled that in order to hold accountants liable in negligence to non-contractual parties who rely to their detriment on inaccurate financial reports, a plaintiff must show (1) the accountants were aware that the reports were to be used for a particular purpose; (2) in the furtherance of which a known party was intended to rely; and (3) some conduct on the part of the accountants linking them to that party which evinces the accountant's understanding of that reliance. *Id.* at 551, 493 N.Y.S.2d 435, 483 N.E.2d 110. Thus, although the Court of Appeals did not adopt the Restatement rule, it does not require privity. The major differences between New York law and the Restatement are that, in New York, the relying party must be known to the speaker and there must be conduct by the speaker which evinces the reliance. The relationship must thus be very close, closer than that contemplated in the Restatement. For example, in *White,* the Court ruled that an accounting firm hired by a limited partnership could be held liable to one of the partners despite the absence of privity because the partner is a member "of a settled and particularized class among the members of which the report would be circulated for the specific purpose of fulfilling the limited partnership agreed upon arrangement". *White,* 43 N.Y.2d at 363, 401 N.Y.S.2d 474, 372 N.E.2d 315.

Weidlinger argues that these principles do not apply to construction cases, in which privity is required before a duty to impart information with care can be imposed. Weidlinger, however, cites no cases which hold that privity is a required element to prove negligent misrepresentation in construction cases, and the Court has found none. Negligent misrepresentation does not require privity in professions besides accounting, *see e.g., Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922) (public weighers); *Mathis, supra; Zampatori, supra,* (private detective agency). *But see Calamari v. Grace,* 98 A.D.2d 74, 469 N.Y. S.2d 942 (2d Dept.1983) (privity required in action against title company). There is no reason that the relaxation of the privity requirement in the tort of negligent misrepresentation should not apply to the construction industry as well.

Trinity's third-party complaint against Weidlinger and Portman sufficiently allege a duty to act with care. Trinity's complaint implies that the architect, structural engineer, and concrete installer for a construction project were aware that their plans would be used by Trinity, the structural steel erector, and they intended that the structural steel erector would rely on them. Furthermore, the complaint implies direct dealings with Trinity which evince the third-parties' understanding of that reliance. The same analysis can be applied to other relevant third-party defendants who did not raise this argument.

#### b. *Negligence*

■ In order to state a claim for negligence, a party must allege that defendant owed plaintiff a cognizable duty of care, breach of that duty, and injury to plaintiff as a proximate result of the breach. *Donohue v. Copiague Union Free School Dist.,* 64 A.D.2d 29, 32, 407 N.Y.S.2d 874 (2d Dept.1978), *aff'd,* 47 N.Y.2d 440, 418 N.Y. S.2d 375, 391 N.E.2d 1352; *see Sawyer v. United States,* 297 F.Supp. 324, 338 (E.D. N.Y.1969), *aff'd,* 436 F.2d 640 (2d Cir.1971). A defendant who is under no duty to a plaintiff cannot be liable to plaintiff, even if negligent. *Livingston v. Gribetz,* 549 F.Supp. 238, 242 (S.D.N.Y.1982). Weidling-

er, McNulty, Portman, St. Lawrence, and Blakeslee each argue that since there is no direct contractual or third-party beneficiary relationship between it and Trinity, each has no duty to Trinity, and hence cannot be held liable. Trinity responds that it is not seeking to enforce contract obligations, but alleges that each third-party defendant breached the duty of care arising out of the circumstances of its relationship with Trinity.

A party who has a contractual duty to one party may be liable in tort to others not parties to the contract if it carries out that duty negligently. *Rozner v. Resolute Paper Products Corp.,* 37 A.D.2d 396, 398, 326 N.Y.S.2d 44 (3d Dept.1971), *aff'd,* 31 N.Y.2d 934, 340 N.Y.S.2d 927, 293 N.E.2d 94 (1972); *Wroblewski v. Otis Elevator Co.,* 9 A.D.2d 294, 297, 193 N.Y.S.2d 855 (3d Dept.1959); *Rosenbaum v. Branster Realty Corp.,* 276 A.D. 167, 93 N.Y.S.2d 209, 211–12 (1st Dept.1949). Liability can arise to a noncontracting party only if the defendant performs its duty; nonperformance is cognizable only as a breach of contract. *Hamill v. Foster-Lipkins Corp.,* 41 A.D.2d 361, 362–63, 342 N.Y.S.2d 539 (3d Dept.1973); *Rozner,* 37 A.D.2d at 398, 326 N.Y.S.2d 44; *Wroblewski,* 9 A.D.2d at 297, 193 N.Y.S.2d 855; *Rosenbaum,* 93 N.Y. S.2d at 212. Even if a contractual duty exists, liability does not automatically flow to third parties. It arises only if the contracting parties clearly intended the assumption of that duty and that its breach should result in liability in favor of a nonparty plaintiff. *Conte v. Aeolian Corp.,* 80 A.D.2d 990, 991, 437 N.Y.S.2d 473 (4th Dept.1981); *Rozner,* 37 A.D.2d at 398, 326 N.Y.S.2d 44.

The issue of intention to create a duty to nonparties turns largely on foreseeability, which in turn depends in part on the relation among the contracting and non-contracting parties. *Havas v. Victory Paper Stock Co., Inc.,* 49 N.Y.2d 381, 385–86, 426 N.Y.S.2d 233, 402 N.E.2d 1136 (1980), *quoting Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928). As spelled out in an earlier British case, *Heaven v. Prender,* 11 Q.B.D. 503, 509, Britt MR (1883):

Whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger.

*Quoted in Havas,* 49 N.Y.2d at 386, 426 N.Y.S.2d 233, 402 N.E.2d 1136. In this case, the Court must thus determine whether Trinity's allegations regarding its relationship between it and the third-party defendants, and the circumstances of that relationship, are such that a duty arose between each third-party defendant and Trinity.

In *Havas, supra,* Morgan Guaranty, Havas' employer, and defendant Victory Paper, had an ongoing arrangement by which Victory removed Morgan's wastepaper. Due to Victory's alleged negligence, Havas was injured while loading bales of waste into Victory's truck. On the issue of whether Victory owed a duty to Havas, the Court stated:

In short, the effort to move the bales was a combined one in which Victory and its driver and Morgan and its men joined affirmatively, thereby so comingling their efforts that it cannot be said as a matter of law that each participant did not owe a duty to avoid subjecting the others to unreasonable hazards.

*Id.* at 387, 426 N.Y.S.2d 233, 402 N.E.2d 1136. In *Rosenbaum, supra,* the court held that Tracy Refrigeration Company, which had a contract with plaintiff's landlord to maintain plaintiff's refrigerator, had a duty to plaintiffs to act with care. These cases indicate that close, foreseeable, intentional involvement between a contracting party and a third party creates a duty on the part of the contracting party to the third party to act with care. The third-party defendants in this case claim, however, that New York courts impose this duty narrowly in construction cases.

### i. *Portman's duty*

In the instant case, Trinity alleges that architect Portman owed it a duty to provide to Trinity accurate, sufficient and complete plans, drawings and specifications in order for Trinity to bid on and perform its obligations under the structural steel subcontract. Portman, relying on *Alvord and Swift v. Stewart M. Muller Const. Co., Inc.,* N.Y.L.J., Sept. 15, 1976 at 7, col. 4 (Sup.Ct.N.Y.Co.Sept. 9, 1976), *aff'd,* 56 A.D.2d 761, 391 N.Y.S.2d 1012 (1st Dept. 1977), *aff'd,* 46 N.Y.2d 276, 413 N.Y.S.2d 309, 385 N.E.2d 1238 (1978), claims it had no duty to Trinity. In *Alvord,* plaintiff was the heating, ventilating, and air conditioning subcontractor. It sued, *inter alia,* the architect, claiming that its plans and specifications were defective and that it negligently administered and supervised the performance of the work on the contract. The plaintiff and architect were not in privity, as plaintiff was hired by the general contractor and the architect had a contract with the building's owner. The Court granted the architect's motion to dismiss, holding that there was no contractual relationship between the plaintiff and the architect, and that no independent duty was shown to exist between them. *See also Underhill Const. Corp. v. Stewart M. Muller Const. Co., Inc.,* N.Y.L.J., Sept. 15, 1976, at 11, col. 1 (Sup.Ct.N.Y.Co.Sept. 9, 1976), *aff'd,* 56 A.D.2d 760, 391 N.Y.S.2d 1000 (1st Dept.1977), *aff'd,* 44 N.Y.2d 666, 405 N.Y.S.2d 40, 376 N.E.2d 201 (1978) (relying on *Alvord,* dismissed claim of concrete subcontractor against architect). In two other cases, courts have relied on the holding in *Alvord.* The Appellate Division relied on the authority of *Alvord* in *James McKinney and Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.,* 92 A.D.2d 991, 461 N.Y.S.2d 483 (3d Dept.1983), *modified,* 61 N.Y.2d 836, 473 N.Y.S.2d 960, 462 N.E.2d 137 (1984), to dismiss a subcontractor's claim against the architect and the design engineer. Similarly, in *Crow-Crimmins-Wolff and Munier v. Westchester County,* 90 A.D.2d 785, 455 N.Y.S.2d 390 (2d Dept.1982), the court, citing *Alvord,* stated that "without privity of contract there is no duty owed to the subcontractor

by the architect and the subcontractor is barred from bringing a direct suit for damages". *Crow-Crimmins*, 455 N.Y.S.2d at 391.

In *Alvord*, however, the court based its ruling on the fact that the "architect was to render services directly to the owner, preparing plans and specifications for it, and supervising construction for the purpose of keeping the owner advised as to compliance with the plans and specifications and whether payment was justified...." *Alvord, supra* at 10. In *Mckinney* and *Crow-Crimmins*, the courts did not fully describe the relationship between the subcontractors and the architect. In this case, the allegations are different from those in *Alvord*. Trinity alleges that Portman provided the plans directly to it in order for Trinity to bid on and perform its obligations under the structural steel subcontract. Trinity was also a major subcontractor in charge of the structural steel erection. As alleged, Trinity and Portman had a direct and close working relationship, and Trinity was a member of the limited class whose reliance was clearly foreseeable to and intended by Portman. On the facts alleged, the Court rules that Portman had a duty to Trinity.

### ii. *Weidlinger's duty*

■ Trinity's allegations against Weidlinger are identical to those against Portman, and Weidlinger moves to dismiss on identical grounds. For the same reasons that the Court found a duty running from Portman to Trinity, it finds a duty running from Weidlinger to Trinity. In addition, the Court relies on *Hamill v. Foster-Lipkins Corp.*, 41 A.D.2d 361, 342 N.Y.S.2d 539 (3d Dept.1973), in which the court held that a supervising engineer could be liable for an act of negligence to the employees of a prime contractor with whom it was not in privity. *Id.* at 362, 342 N.Y.S.2d 539.

### iii. *McNulty's duty*

■ Trinity alleges that McNulty, who installed the precast concrete panels, negligently surveyed the steel structure and advised Morse that they were improperly placed, resulting in Trinity's retention of another firm to complete the survey. As alleged, it was foreseeable to and intended by McNulty that its survey would dictate Trinity's behavior, and that Trinity would rely on it. Furthermore, in *McKinney, supra*, the court refused to dismiss the claim of a subcontractor against the supervising engineer with whom it was not in privity. The court ruled that the engineer's duties involved reviewing the design during its implementation and identifying defects. These duties, the court said, inured to the benefit of the subcontractor, and thus the engineer could be liable for damages. Similarly in this case, McNulty had an obligation to Morse to survey the placement of the steel connector clips for defects, and this duty inured to the benefit of Trinity.

### iv. *Blakeslee's duty*

■ Trinity alleges that Blakeslee owed it a duty to deliver precast concrete panels manufactured according to the specifications in a timely manner. Since Trinity was to install the panels, it was foreseeable to Blakeslee and intended by Blakeslee that Trinity would rely on Blakeslee's performance of its contractual obligations. Thus, Trinity has stated a claim against Blakeslee for negligence.

### v. *St. Lawrence's duty*

■ Finally, Trinity alleges that St. Lawrence had a duty to supply Trinity with the plans for the steel connector clips and failed to do so in a timely manner. Although St. Lawrence argues that it cannot be held liable to a third party for nonperformance of a contract, Trinity alleges that St. Lawrence did perform its contract, although in an untimely manner. It is also clear from the complaint that St. Lawrence was to provide the plans directly to Trinity for its use, and thus, even though they were not in privity, St. Lawrence owed a duty to Trinity arising out of St. Lawrence's contract with Morse.

### c. *Recovery for Economic Loss*

McNulty, St. Lawrence, Blakeslee, and Portman argue that Trinity is seeking damages for its economic loss, and that dam-

ages for economic loss are not available in a negligence action. Trinity does not dispute that it is seeking damages for economic loss, but argues that it is seeking damages for economic loss resulting from negligent performance of contractual duties, and that such damages are available in such an action.

Damages for economic loss are not available for negligence in connection with the provision of goods. *Consolidated Edison Co. of New York v. Westinghouse Electric Corp.*, 567 F.Supp. 358, 364–65 (S.D.N.Y.1983). *See Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5–7, 465 N.Y.S.2d 606 (4th Dept.1983). However, damages are available in a suit for negligent performance of contractual duties even when only economic injury is alleged. *Consolidated Edison*, 567 F.Supp. at 364–65. Such recovery is available to parties not in privity with the contracting party as long as a duty exists between them. *See Price Brothers Co. v. Olin Construction Co., Inc.*, 528 F.Supp. 716, 721 (W.D.N.Y.1981); *Steckmar National Realty and Investment Corp., Ltd., v. J.I. Case Co.*, 99 Misc.2d 212, 214, 415 N.Y.S.2d 946 (Sup.Ct.N.Y.Co.1979).

Trinity alleges that St. Lawrence negligently provided inaccurate plans for the steel connector clips, and that McNulty negligently surveyed the steel structure. Trinity thus claims that both were negligent in the performance of contractual duties. While these services were provided in connection with the provision of goods, the damages allegedly arose not from a product defect, but from the negligent exercise of contractual duties. *See Consolidated Edison*, 567 F.Supp. at 365 (delay in informing plaintiff of the results of steam generator inspection). *See Suffolk County v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir.1984) (plaintiff's claim that product did not function properly, requiring plaintiff to incur costs of repair, is not compensable).

Blakeslee argues that it provided only goods, namely the precast concrete panels for the exterior surface of the hotel, and not services. Trinity's complaint against Blakeslee reads, in pertinent part:

... As the supplier of the prestressed concrete planks which Trinity had a contractual duty to erect, Blakeslee had a duty to supply such planks at the site of the construction of the Times Square Hotel in accordance with the construction schedule.

... Blakeslee negligently failed to take the necessary action to assure that the prestressed concrete planks would be received by Trinity on a timely basis and in conformity with the construction schedule.

... In addition, Blakeslee negligently furnished certain prestressed concrete planks that did not comply with the structural steel subcontract in that such planks were damaged when delivered to the construction site of the Times Square Hotel.

Trinity alleges both that the concrete was defective and that Blakeslee breached its contractual obligation to deliver the concrete in a timely manner. The issue is thus whether the latter duty is a "service".

In *Consolidated Edison*, supra, the court stated that the provision of operating instructions for equipment was not a service separate from the supplying of the equipment. *Id.* at 366, n. 11. Similarly, it could be argued that the provision of the concrete in a timely manner was not a service separate from providing the concrete. In the context of this case, however, the Court rejects this. Trinity alleges that there was a construction schedule with which Blakeslee had a duty to comply. The importance of complying with this schedule is clear in light of the importance of the coalescence of the efforts of the numerous subcontractors. Furthermore, delivery of the concrete panels, as opposed to their design and manufacture, is itself a service. Blakeslee's alleged obligation thus included the provision of services.

Trinity alleges that Portman and Weidlinger were negligent in the provision of services—the architectural plan and engineering services. Damages are available in connection with such a claim.

### 2. *Contribution*

McNulty, Weidlinger, St. Lawrence, Blakeslee, Portman, and Morse move to dismiss Trinity's contribution claim. The third-party defendants argue that Trinity is not entitled to contribution because they owed no duty to Trinity and Morse or Helena. Morse argues that Trinity cannot recover contribution absent an independent basis of liability from Morse to Helena.

The New York law of contribution, codified in N.Y.Civ.Prac.Law § 1401, provides that

> two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

An action for contribution requires that the third-party defendant owes a duty to the plaintiff in the main action or the third-party plaintiff; a breach of that duty; and that the breach contributed to the plaintiff's injuries. *Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 460 N.Y.S.2d 774, 447 N.E.2d 717 (1983); *Crow-Crimmins-Wolff and Munier v. Westchester County*, 90 A.D.2d 785, 455 N.Y.S.2d 390, 391 (2d Dept. 1982). In addition, when the duty runs from the third-party defendant to the third-party plaintiff, the injury for which the recovery is sought in the main action must have been a foreseeable consequence of the alleged breach of the duty. *Hanley v. Fox*, 97 A.D.2d 606, 607, 468 N.Y.S.2d 193 (3d Dept.1983). *See Garrett*, 58 N.Y.2d at 261, 460 N.Y.S.2d 774, 447 N.E.2d 717.

■■■ The Court has already found a duty running from the third-party defendants to Trinity. In addition, Morse and Trinity have a contractual relationship. Trinity alleges that these duties were breached, and that this breach contributed to Morse's and/or Helena's injuries. As to foreseeability of the injuries, Morse claims that it was damaged by Trinity's failure to complete its subcontract in a timely and workmanlike manner. Helena claims that Trinity damaged it by failing to deliver structural steel in a timely manner, delivering nonconforming structural steel, failing to coordinate Helena's work with that of the other subcontractors, and failing to provide Helena with accurate plans and specifications. Such injuries were clearly foreseeable consequences of the alleged breach of Morse's and the third-party defendants' obligations.

### 3. *Indemnification*

■■■ The right to indemnification may arise out of an express agreement of indemnification, or it may be implied by law in favor of one who is held liable solely by imputation of law because of its relation to the actual wrongdoer. *Jordan v. Madison Leasing Co.*, 596 F.Supp. 707, 709 (S.D.N. Y.1984).

■■■ Trinity alleges that its contract with Morse provides for the following:

> Should [Trinity] be obstructed or delayed in the commencement, prosecution, or completion of the work, without fault on [its] part, by action or inaction on the part of the owner, architect, engineer or [Morse/Diesel] or by changes in the work, [Trinity] shall be entitled to include as cost the cost of labor, materials, equipment, supplies and other resultant costs occasioned by such delays....

This alleged contractual provision entitles Trinity to "other resultant costs" from delays not its fault. The parties may have intended this to be an indemnification agreement. This determination, however, must await trial. For now, however, this allegation is sufficient to state a claim that Trinity has an implied indemnification agreement with Morse.

Trinity argues it is entitled to implied indemnification against the third-party defendants because it is potentially liable to Morse and Helena for their negligence. The third-party defendants argue, in response, that implied liability can be found only when the third-party plaintiff can be held vicariously liable for the actions of the third-party defendants.

■■■ Resolution of this dispute lies in the difference between contribution and

indemnification. "Contribution involves an apportionment of responsibility where wrongdoers are *in pari delicto*." *Westchester County v. Welton Becket Assoc.*, 102 A.D.2d 34, 46, 478 N.Y.S.2d 305 (2d Dept.1984). The issue in a contribution case is degree of responsibility. Indemnity, on the other hand, shifts the entire loss from one compelled to pay, without regard to its fault, to another party who should bear responsibility for that loss because it is the actual wrongdoer. In this case, although Trinity argues it might be held liable solely for the negligence of another, "[t]here is no view of the third-party complaints supporting a theory that [Trinity], if held liable to [Morse and Helena], is being cast in damages solely for the negligence of the [third-party defendants] or on the basis of vicarious or imputed liability." *Garrett*, 58 N.Y.2d at 263, 460 N.Y.S.2d 774, 447 N.E.2d 717. Rather, Trinity has stated a claim for proportionate liability. Despite this ruling that only a claim for contribution, not indemnification, exists, if at trial it turns out that any liability is entirely due to one or more of the third-party defendants, the liability will be entirely shifted from Trinity. *Westchester County*, 102 A.D.2d at 48, 478 N.Y.S.2d 305. If only one party were negligent, liability would be incurred by that party alone.

### C. *Motions to Dismiss Helena's Claims*

#### 1. *Negligence Claims*

▇▇▇ Blakeslee and Portman seek to dismiss all of Helena's negligence claims asserted against them on the grounds that they seek to recover for economic loss and that they owe no duty to Helena. Helena's pleadings indicate that legally it is in virtually the identical posture toward the third-party defendants as Trinity. Helena's allegations against them are also very similar. For the reasons set forth in the relevant sections of this opinion addressing the motions to dismiss Trinity's claims, these motions to dismiss Helena's negligence claims are denied.

▇▇▇ Morse also seeks to dismiss the negligence claims Helena brings against it.

Alternative grounds exist for denying this motion.

First, it appears from Morse's contract which is incorporated into its complaint, that Morse and Helena are in privity. Second, assuming there is no privity, the Court's discussion of the law of negligence indicates that a duty ran from Morse to Helena, that Helena is seeking recovery for Morse's negligent performance of its contract with Trinity, and that Helena is suing for economic loss in connection with the provision of services. Thus, Helena states a claim for negligence against Morse.

#### 2. *Contribution Claims*

For similar reasons, McNulty's, Morse's, St. Lawrence's, Portman's, and Blakeslee's motions to dismiss Helena's contribution claims are denied.

### CONCLUSION

In conclusion, all claims by all parties survive the motions to dismiss with the exception of Trinity's claims for indemnity and Trinity's claim against St. Lawrence for negligent misrepresentation.

SO ORDERED.