OPINION OF THE COURT
David O. Boehm, J.
The question raised in this motion for summary judgment is whether an employee who does not himself rely upon a negligent misrepresentation but who claims to have been directly affected because of his employer’s reliance thereon, may bring an action for damages claimed to have been suffered as a result. The issue is apparently one of first impression.
Although it is well settled that an action for negligent misrepresentation exists, recovery until now has been limited only to those who might reasonably be expected to rely directly upon such representations. This action seeks to extend recovery to one who has suffered damage as a result of someone else’s reliance "upon such misrepresentation.
*406 The facts are in the main undisputed. Plaintiff, Guy Zampatori, who had been employed in the Rochester, New York, office of United Parcel Service (UPS) since 1969, and was head clerk for seven years, was discharged after an investigation which resulted from the discovery in November, 1981 that two bags containing C.O.D. receipts amounting to $3,600 were missing. UPS retained Doyle Detective Bureau, Inc. (Doyle Detective) to administer polygraph tests to its employees, and two were given to plaintiff, one on November 12, 1981 and a second on November 18, 1981. Plaintiff was informed by the Doyle Detective agent who conducted the tests that plaintiff had done much better on the second test than on the first, and that it clearly showed he was not involved in any way with the missing receipts. However, in its report to UPS, Doyle Detective reported that the plaintiff showed stress and deception on the second polygraph test and that plaintiff might be indirectly involved in the theft.
Thereafter, UPS pursued its investigation and continued to question plaintiff, Guy Zampatori, about his involvement and that of other employees. The plaintiff maintained his innocence and refused to implicate anyone else. He was finally terminated on December 18,1981. Thereafter, plaintiffs brought this action for damages against UPS, Doyle Detective and Ronald Russo, a UPS employee in charge of the investigation.
Plaintiffs’ amended complaint contains six causes of action, of which the third and fifth are directed against Doyle Detective. Defendants UPS and Russo successfully moved for summary judgment on September 28, 1983 before this court (Patlow, J.), and the fourth and sixth causes of action as to them were dismissed without prejudice to renew upon completion of discovery.
Doyle Detective is now moving for summary judgment on the third cause of action brought by Guy Zampatori on his own behalf, and the fifth cause of action brought by his wife, plaintiff, Joanne Zampatori, for derivative damages. Doyle Detective argues that plaintiff, Guy Zampatori, willingly and voluntarily agreed to take the tests on both occasions and signed a release on November 18, 1981, releasing Doyle Detective from any and all claims after *407 consulting with his lawyer; that no proof has been produced by plaintiffs showing that Doyle Detective performed the polygraph tests negligently or misrepresented their results; that the only duty of care owed by Doyle Detective was to UPS with whom it had contracted and, therefore, even assuming the negligent administration of the polygraph tests or the misrepresentation by Doyle Detective of their results, plaintiffs have no basis for an action against it; and, lastly, that the plaintiff’s discharge was not in any event affected by the polygraph tests since he was not fired because UPS “believed he took the money, but because of his admitted negligence in the performance of his duties in failing to properly secure the safe.” (Weir affidavit.) Ted Weir was the Rochester division manager of UPS at the time and plaintiff Guy Zampatori’s supervisor.
Although UPS supports the position of Doyle Detective that plaintiff was not discharged because he was suspected of being involved with the missing receipts, Ted Weir in his same affidavit admits that “[a]s a result of [plaintiff’s] admission regarding the manner of locking the safe, and the report we received from Doyle Detective Bureau that [plaintiff] had showed deception on key questions in his polygraph examination, I informed [plaintiff] on November 13, 1981 that he would be suspended pending further investigation. Later, on December 18, 1981, I informed [plaintiff] that he was being discharged” (emphasis added).
The fact that the Doyle Detective agent, William Mahoney, who conducted the polygraph tests, reported one thing to the plaintiff and another to his employer is not a sufficient basis for plaintiff’s action against Doyle Detective. More must be shown than the mere fact that the agent, for whatever reason, may have misled the plaintiff. Doyle Detective’s duty was to administer the polygraph tests correctly and to report its findings accurately to UPS. It owed no duty to plaintiff to disclose the results of such tests to him, whether accurately or inaccurately, and were this the only basis for plaintiffs’ action against Doyle Detective, the motion for summary judgment would have to be granted.
However, the question to be decided goes beyond this because it is plaintiffs’ claim that the polygraph tests were *408 negligently administered and, as a result of such negligence, plaintiffs sustained injuries and suffered damages. Although plaintiffs have not submitted proof of such negligent administration, Guy Zampatori states in his reply affidavit that his request to examine the polygraph test charts has not as yet been met and he is, therefore, unable at this time to furnish such evidence. This is sufficient to defeat the motion on this ground at this time (Hartwig v Three F. Conservation Soc., 49 AD2d 678).
The fact that plaintiff signed a release is apparently not seriously raised by Doyle Detective as a defense. Even if it were, there would be a strong question as to whether it relieves Doyle Detective of liability, and that question could certainly not be resolved on the papers here submitted (see Franzek v Calspan Corp., 78 AD2d 134). That issue, therefore, may be bypassed.
Here, all of the necessary elements required in an action for negligent misrepresentation, originally enunciated in International Prods. Co. v Erie R. R. Co. (244 NY 331, 338, cert den 275 US 527), may be found: (1) knowledge or its equivalent that the information is required for a serious purpose; (2) that the party to whom it is given intends to rely and act upon it; (3) injury in person or property because of such reliance; and (4) the relationship of the parties, arising out of contract or otherwise, is such that in morals and good conscience one party has the right to rely upon the other for information and the other owed a duty to give it with care.
Applying these requirements to this case, it is apparent that all four are met. Doyle Detective knew that the polygraph test results were needed by UPS for a serious purpose; that UPS could reasonably be expected to rely on it; that someone, here the plaintiffs, would be damaged by UPS’ reliance if the test results inaccurately indicated that Guy Zampatori was responsible for the missing funds. Lastly, Doyle Detective, in undertaking to administer the polygraph tests, also assumed the correlative duty of administering them with reasonable care and accurately reporting their results. Although no special relationship of trust is alleged in the complaint, such relationship may be *409 reasonably inferred from a reading of the complaint in its entirety.
However, the question of the duty owed by Doyle Detective to plaintiff Guy Zampatori merits serious consideration. Generally, whether the nature of the relationship is such as to create a duty is a question of law.
It is true that plaintiff, Guy Zampatori, was not the one expected to rely upon the results of the polygraph. Nevertheless, he would be directly affected by his employer’s reliance thereon. Such reliance would clearly have negative consequences upon his continued employment. As stated by Judge Cardozo in Ultramares Corp. v Touche (255 NY 170,182) in explaining why liability had been imposed upon the public weighers engaged by the seller of beans in Glanzer v Shepard (233 NY 236), “Here was a case where the transmission of the certificate to another was not merely one possibility among many, but the ‘end and aim of the transaction’”. Similarly in the case at bar, the transmission of the polygraph test results to UPS, upon which it could be reasonably expected to act to Guy Zampatori’s benefit or detriment, was the “ ‘end and aim of the transaction’ ” (see, also, White v Guarente, 43 NY2d 356; 1 NY PJI2d 545).
In addition, it is established as a matter of public policy that a private detective agency should be held responsible for damages sustained as a result of its “wilful, malicious and wrongful act” (General Business Law, § 74, subd 1, par [b]), including damages which may be suffered by third persons (Lamb v United States Fid. & Guar. Co., 162 NYS 138; see, also, Schauder v Weiss, 276 App Div 967, mot for lv to app den 276 App Div 1022).
The good faith and reasonable care in conducting investigations and in rendering reports, which is required by law as a condition for the continuation of a private investigator’s license, would seem to measure the duty of Doyle Detective in this action (see Advance Detective Bur. v Lomenzo, 24 AD2d 417, 418).
Even if it did not, it would certainly seem that, at the very least, the theory of liability in this case would be similar to that which makes a mercantile agency responsi- ° ble in damages for falsely reporting to its subscribers *410 financial information of a third person. It is true that a lawsuit in such case would be based upon libel or slander and subject to such an action’s rigorous limitations, which require not only that the statements be false but that the agency was motivated by express malice or actual ill will or that the information in its credit report demonstrates wanton and reckless negligence (see Sunderlin v Bradstreet, 46 NY 188; Sondak v Dun & Bradstreet, 39 Misc 2d 13). Nevertheless, if privilege is not shown, the law imposes a duty upon mercantile agencies of using care in obtaining credit information from a third person and reporting it correctly to its subscribers.
It would seem that, at the very least, a similar nexus exists here between Doyle Detective and Guy Zampatori, who was tested not once, but twice, and whose damage by a false report of negligently administered polygraph was reasonably foreseeable.
The fact that privity did not exist between Guy Zampatori and Doyle Detective is not dispositive. Whether acting as an agent or as an independent contractor on behalf of the principal who hired him, a party may not escape liability simply because he was acting at the time at the behest of his principal. Tort liability is not based upon nor limited by a contractual relationship. Rather, it depends upon the common-law obligation that every person must so act as not to injure another. Similarly, the duty to act and to speak with care need not be stated in terms of contract or privity, since it is a duty imposed by law (see White v Guarente, 43 NY2d 356, supra; Glanzer v Shepard, 233 NY 236, supra).
Although UPS denies that it relied on the polygraph results in making its decision to terminate Guy Zampatori’s employment, that question should properly be tested and decided by the trier of fact. The employer’s denial should not, without more, be accepted by the court as a matter of law.
Defendant’s motion is, therefore, denied at this time without prejudice to its renewal after discovery, including an examination of the polygraph test results by the plaintiffs, has been completed.