739 P.2d 1318

**WESTERN TECHNOLOGIES, INC., an Arizona corporation, formerly known as Engineers Testing Laboratories, Inc., Plaintiff-Appellant,**

v.

**SVERDRUP & PARCEL, INC. aka Sverdrup & Parcel and Associates, Inc., a Delaware corporation, doing business in Arizona; Joe Wise; John F. Fischer and Anna Fischer, husband and wife; William E. Gustafsen and Elizabeth Gustafsen, husband and wife; James A. Larsen and Mildred I. Larsen, husband and wife, Defendants-Appellees.**

No. 1 CA–CIV 8645.

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 16, 1986.

Review Denied July 9, 1987.

Gallagher & Kennedy, P.A. by Kevin E. O'Malley, Elliot Talenfeld, Phoenix, for defendants-appellees.

Shimmel, Hill, Bishop & Gruender, P.C. by Daniel F. Gruender, Richard B. Kelly, Charles E. Maxwell, Phoenix, for plaintiff-appellant.

## OPINION

KLEINSCHMIDT, Judge.

In the early 1970's, the Arizona Board of Regents (Board) retained Western Technologies, Inc. (Western) to perform geotechnical engineering testing for the proposed expansion of Sun Devil Stadium. Western based its testing on designs provided by the Board. The stadium expansion was completed in the late 1970's.

Shortly after completion, cracks developed in the stadium. The Board hired Fox and Associates, another engineering firm, to investigate the cause of the cracks. Fox originally retained Sverdrup & Parcel, Inc. (Sverdrup) to assist in its analysis. Sverdrup eventually replaced Fox altogether. Sverdrup's report to the Board criticized Western's work and blamed Western, at least in part, for the stadium's structural defects.

The Board, seeking compensation for the expense of repairing the stadium, sued a number of parties, including Western. Western and the Board settled. Western subsequently filed suit against Sverdrup to

recover for what it paid the Board in settlement, for attorney's fees it expended in the suit against the Board, and damages for loss of business it allegedly suffered. Western also joined a number of individual employees of Sverdrup as defendants. For the sake of convenience we refer to all the defendants as "Sverdrup."

Western alleged that Sverdrup conducted its studies of Western's work negligently and in disregard of accepted engineering practices. Western claimed that Sverdrup's report to the Board constituted fraudulent and negligent misrepresentation, as well as intentional interference with prospective contractual relations. Western's complaint also alleged that it was the third-party beneficiary of the contract between the Board and Sverdrup and that Sverdrup had breached that contract. Western did not raise this issue in its briefs on appeal, however, and we therefore deem it waived. *See Van Loan v. Van Loan,* 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977).

The trial court granted Sverdrup's motion for judgment on the pleadings. Western then moved to amend its complaint to clarify its claim of intentional interference with contractual relations. The court denied the motion, and Western appealed.

On review we must assume the truth of Western's allegations. We can uphold the dismissal only if Western would not be entitled to any relief if it proved its allegations. *Donnelly Construction Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984).

### MISREPRESENTATION

The majority of claims in Western's complaint assert that Sverdrup harmed Western by its evaluation of Western's work. The essence of these counts is that Sverdrup negligently, recklessly or intentionally supplied the Board with false and misleading information. While the record in this case indicates that at times Western seemed to assert a negligence claim separate and apart from these representations, we are unable to glean from the complaint any negligence claim other than a claim for negligent misrepresentation.

Western's brief concentrates on foreseeability of harm as a component of the duty owed by Sverdrup to Western in making these representations. The trial court also focused on foreseeability in dismissing the complaint. This approach is slightly off the mark.

In Arizona the rule is as follows:

The question of duty is decided by the court. The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable even though he may have acted negligently in light of foreseeable risks.

*Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). Contrary to Western's contention, a determination that its injury was foreseeable is not dispositive.

In the context of negligent misrepresentations, Arizona has adopted the *Restatement of Torts'* relatively restrictive view. According to this view, the *party injured* must have relied on the information the defendant supplied. *Arizona Title Insurance & Trust Co. v. O'Malley Lumber Co.,* 14 Ariz.App. 486, 491, 484 P.2d 639, 644 (1971). *See also Restatement (Second) of Torts,* § 552 (1977). Western claims in only one of its counts that it relied on Sverdrup's representations; in its other counts Western claims it was injured by the *Board's* reliance on the information. Thus, these later counts do not state a cause of action for negligent misrepresentation.

Western cites *Zampatori v. United Parcel Service,* 125 Misc.2d 405, 479 N.Y.S.2d 470 (Sup.Ct.1984), in support of the opposite conclusion. *Zampatori* is simply not the law in Arizona.

The sole count in which Western alleges that it relied upon Sverdrup's representations also fails to state a claim for negligent misrepresentation. Reliance upon the representations in question is not enough to establish such a claim. Western must also demonstrate that this reliance

caused its injuries. *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982). Western claims that it had to rely on Sverdrup's reports because it was barred from the stadium site. It is not apparent how this reliance harmed Western because it was the Board's action based on the reports that caused Western's alleged injuries. Therefore, Western cannot recover on any of its fraudulent misrepresentation claims.

## INJURIOUS FALSEHOOD

■ While Western's allegations do not state a claim for fraudulent misrepresentation, they do establish a cause of action for injurious falsehood. Generally, injurious falsehood "consist[s] of the publication of matter derogatory to the plaintiff's ... business in general ..., of a kind calculated to prevent others from dealing with him or otherwise to interfere with his relations with others to his disadvantage." W. Prosser and W. Keeton, *The Law of Torts* § 128 at 963 (5th ed. 1984); *see also Restatement (Second) of Torts* § 623A.

■ One of the comments to the *Restatement* sets forth an example of injurious falsehood:

> 1. A, an employer, knowing his statement to be false, reports to income tax authorities that he has paid B, his employee, a salary of $10,000 for the year. As a result B, who has in fact received a salary of $5,000 and has so reported, is prosecuted by the United States government for tax evasion and suffers pecuniary loss in the defense of the suit. A is subject to liability to B.

*Restatement* § 623A comment a, illustration 2. This example is analogous to the present case. Western alleges that Sverdrup, knowing its statement to be false, reported to the Board that Western was at fault for the damage to Sun Devil Stadium. As a result, the Board sued Western, and Western suffered pecuniary loss in the defense of the suit. These allegations establish a cause of action for injurious falsehood.

However, § 635 of the *Restatement* states that the defense of absolute privilege is available in an action for injurious falsehood. Absolute privileges, commonly associated with defamation actions, recognize that " 'conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection.' " *Green Acres Trust v. London*, 141 Ariz. 609, 612, 688 P.2d 617, 620 (1984), (quoting Prosser, *Law of Torts* (4th ed. 1971) § 114, p. 776 (footnote omitted)).

■ An absolute privilege exists for participants in judicial proceedings. Our supreme court has explained this privilege:

> The socially important interests promoted by the absolute privilege in this area include the fearless prosecution and defense of claims which leads to complete exposure of pertinent information for a tribunal's disposition. Prosser, *Law of Torts* (4th ed. 1971) § 114 p. 777–81. The privilege protects judges, parties, lawyers, witnesses and jurors. The defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense. *Id.* Whether the privilege exists is a question of law for the court, Restatement (Second) of Torts, § 619, and may be properly raised in a motion to dismiss, if the facts establishing the occasion for the privilege appear in the pleadings. *Sierra Madre Development, Inc. v. Via Entrada Townhouses Assn.*, 20 Ariz.App. 550, 514 P.2d 503 (1973), or in a motion for summary judgment. *See Drummond v. Stahl*, 127 Ariz. 122, 618 P.2d 616 (App.1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981).

*Green Acres Trust*, 141 Ariz. at 613, 688 P.2d at 621.

Western alleges that Sverdrup knew or reasonably should have known that the Board would use its reports and recommendations to decide whether to sue Western. Thus, we must determine whether Sverdrup's status as a potential witness in contemplated litigation made its statements absolutely privileged.

Our supreme court has stated that "to fall within the privilege, the defamatory publication must relate to, bear on or be connected with the proceeding.... The defamatory content of the communication need not be 'strictly relevant,' but need only have some reference to the subject matter of the proposed or pending litigation." *Green Acres,* 141 Ariz. at 613, 688 P.2d at 621, (quoting *Restatement (Second) of Torts* § 586 comment c). *Restatement* § 588 comment e, states that the privilege applies only "when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." *See also Ascherman v. Natanson,* 23 Cal.App.3d 861, 100 Cal.Rptr. 656 (1972).

Western cites Prosser and Keeton, *Law of Torts* § 114, p. 819, for the proposition that although the privilege "extends to every step in the judicial proceeding until final disposition," it "does not cover publications made before commencement or after termination of the proceeding." Western, however, overlooks the conclusion of the cited paragraph which states that "[c]onversations preliminary to the proceeding have given some difficulty. ... [A]n interview of the attorney with a prospective witness has been considered a necessary step in taking legal action, and the immunity has been held to be absolute."

■ Sverdrup made its statements while the Board was seriously contemplating litigation. Furthermore, because the Board could not assert Western's liability until it obtained an expert assessment of Western's fault, Sverdrup's reports constituted "a necessary step in taking legal action." Finally, the Board actually relied upon the reports in bringing suit. Consequently, Sverdrup's reports and recommendations are absolutely privileged and Sverdrup's motives are irrelevant.

## INTENTIONAL INTERFERENCE

Western also asserts that its original complaint sets forth a cause of action for intentional interference with prospective contractual relations. We cannot agree. It is clear that throughout the proceedings below, Western claimed that Count 3 of its complaint set forth an "intentional tort." However, it is equally clear that neither the trial court nor the parties could determine the exact nature of that tort. We agree with the trial court that Count 3 of the original complaint does not state a cause of action.

■ Western came forward with an amended complaint to clarify Count 3 only after the trial court granted the motion to dismiss. The court denied the motion to amend on the basis that it added nothing to the original complaint. We disagree. The amended complaint alleged for the first time that the Board and Western had an ongoing business relationship from which Western expected future contractual relations. It also alleged that Sverdrup knowingly supplied false and misleading information to the Board for the purpose of inducing the Board to refrain from business with Western. Thus, the amended complaint stated a cause of action for intentional interference.

■ While courts are generally liberal in allowing the amendment of pleadings, the denial of a motion to amend is nevertheless within the discretion of the trial court. *Hall v. Romero,* 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984). In this case, however, the trial court did not exercise its discretion in denying the motion to amend, but incorrectly felt that the amended complaint stated no cause of action. We need not remand to allow the trial court to exercise its discretion, however, because we hold that the same privilege that bars Western's action for injurious falsehood also bars its action for intentional interference with a contractual relationship.

Our supreme court recently adopted the *Restatement's* approach to privilege in interference actions:

We concur in the Restatement's rejection of the formalistic privilege concept in favor of a requirement that an interference be 'improper' for liability to attach. It is difficult to see anything defensible, in a free society, in a rule that would impose liability on one who honestly persuades another to alter a contractual relationship.... We find nothing inherently wrongful in 'interference' itself. If the interferer is to be held liable for committing a wrong, his liability must be based on more than the act of interference alone. Thus, there is ordinarily no liability absent a showing that defendant's actions were improper as to motive or means.

*Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). *Wagenseller* listed the following seven factors as bearing on the determination of whether an interference was improper:

(a) the nature of the actor's conduct;

(b) the actor's motive;

(c) the interests of the other with which the actor's conduct interferes;

(d) the interests sought to be advanced by the actor;

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other;

(f) the proximity or remoteness of the actor's conduct to the interference; and

(g) the relations between the parties.

*Wagenseller*, 147 Ariz. at 387, 710 P.2d at 1042, (quoting *Restatement* § 767).

Comment 1 to § 767 of the *Restatement* recognizes that where "identifiable standards of business ethics or recognized community customs as to acceptable conduct" have developed, the existence of the privilege may be a question of law. While we do not deal with standards of business ethics or community customs here, we nevertheless feel that this is a case in which the decision as to the propriety of Sverdrup's actions can be decided as a matter of law.

*Wagenseller* notes that one of the factors relevant to the determination of whether a defendant's actions were improper is "the social interests in protecting the freedom of action of the actor and the contractual interests of the other." *Wagenseller*, 147 Ariz. at 387, 710 P.2d at 1042. *Wagenseller*, of course, did not deal with the privilege for statements made in connection with judicial proceedings. While not discounting the other *Wagenseller* factors, the importance of protecting witnesses and potential witnesses from liability arising out of their roles in the judicial process outweighs the competing considerations. Furthermore, it would be illogical to hold that the representations Sverdrup made are absolutely privileged in the context of an injurious falsehood action, but that the same representations are not privileged in the context of a suit for contractual interference.

Finally, as comment 1 to *Restatement* § 767 points out, a holding that a communication which might otherwise be interference is proper as a matter of law is most appropriate where "recurrent fact patterns" indicate that "identifiable standards" exist. In situations similar to this case, other courts have held that the application of the privilege is appropriate. As one court noted, "[W]e determine that tortious interference is also subject to the same privilege defenses due to the common root it shares with slander of title [injurious falsehood] and the fact that, in this case, *both torts allegedly arose from the single act.*" (Emphasis added.) *Procacci v. Zacco*, 402 So.2d 425, 427 (Fla.App.1981). Another court commented as follows:

[T]he absolute privilege which precludes a slander of title [injurious falsehood] cause of action also precludes a cause of action for tortious interference with contractual relation or economic advantage. 'If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings, is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.'

*Lone v. Brown*, 199 N.J.Super. 420, 429–30, 489 A.2d 1192, 1197 (N.J.Super.Ct.App.Div. 1985), (quoting *Ranier's Dairies v. Rari-*

*tan Valley Farms, Inc.,* 19 N.J. 552, 564, 117 A.2d 889, 895 (1955)); *see also Brody v. Montalbano,* 87 Cal.App.3d 725, 738, 151 Cal.Rptr. 206, 215 (1978); *McLaughlin v. Tilendis,* 115 Ill.App.2d 148, 253 N.E.2d 85 (1969); *Griffin v. Rouden,* 702 S.W.2d 692, 695 (Tex.App.1985). *But see Twelker v. Shannon & Wilson, Inc.,* 88 Wash.2d 473, 564 P.2d 1131 (Wash.1977).

We therefore hold that under the facts alleged in Western's amended complaint, Sverdrup's statements were privileged as a matter of law. The amended complaint fails to state a cause of action for which relief can be given.

## ATTORNEY'S FEES

Western also appeals from the trial court's award of $19,002 in attorney's fees to Sverdrup under A.R.S. § 12–341.01(A). The statute states that the court may award the successful party attorney's fees "[i]n any action arising out of a contract." Western claims that this action did not arise out of a contract while Sverdrup claims the action arose out of its contract with the Board. We agree with Western and hold that the trial court improperly awarded attorney's fees.

The cases which bear on this issue are *Sparks v. Republic National Life Insurance Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982); *Trebilcox v. Brown & Bain, P.A.,* 133 Ariz. 588, 653 P.2d 45 (App.1982), and *Lewin v. Miller Wagner & Co.,* 151 Ariz. 29, 725 P.2d 736 (App.1986). All three involved contractual disputes intertwined with tort actions.

In *Sparks,* the plaintiffs brought a tort action against their insurer for bad faith and misrepresentation. The trial court awarded attorney's fees under A.R.S. § 12–341.01(A). The Arizona Supreme Court found that because the duty of good faith was implicit in the contract, an insurer could not act in bad faith without breaching the contract. The plaintiffs' bad-faith insurance claim, the court held, arose out of contract for the purposes of § 12–341.01(A) because it was inextricably linked to a breach of the insurance contract. 132 Ariz. at 543–44, 647 P.2d at 1141–42. In contrast, the court found that the plaintiffs' misrepresentation claim

could arise without a breach of the insurance contract. Consequently, the court held that the misrepresentation action did not arise from the contract. 132 Ariz. at 544, 647 P.2d at 1142.

In *Trebilcox,* we relied on *Sparks* in holding that a tort action for breach of an attorney's fiduciary duty arose out of contract for purposes of A.R.S. § 12–341.-01(A). We reasoned that because the attorney's fiduciary duty was implicit in the attorney-client contract, a breach of the fiduciary duty constituted a breach of the contract as well. We therefore found that attorney's fees were awardable. 133 Ariz. at 591, 653 P.2d at 48.

In *Lewin,* however, we held that attorney's fees were not awardable in a tort action for accounting malpractice because the action did not arise out of contract. We determined that while the accountant's duty to exercise reasonable care in providing accounting services arose in the context of an accountant-client contractual relationship, the duty did not stem from the contract itself. Instead, it was imposed by law and was independent of the contract. Consequently, the breach of duty that gave rise to the accounting malpractice action did not constitute a breach of the accountant-client contract. Attorney's fees were therefore not awardable under A.R.S. § 12–341.01(A). 151 Ariz. at 37–38, 725 P.2d at 743–44. *See also Marcus v. Fox,* 150 Ariz. 333, 334–36, 723 P.2d 682, 683–85 (1986); *Cauble v. Osselaer,* 150 Ariz. 256, 260–62, 722 P.2d 983, 987–89 (1986).

Upon re-examination we think it difficult to reconcile *Trebilcox* and *Lewin,* and while this determination is not essential to the resolution of this case, we believe that the approach adopted in *Lewin* is the correct one.

In this case, the law imposed upon Sverdrup a duty not to speak negligently, injuriously and falsely of Western, "separate and apart" from any duty that the contract between the Board and Sverdrup imposes. Thus, only one of the claims Western has made against Sverdrup arose out of contract, and the trial court improperly awarded attorney's fees for the other claims. This result is particularly appropri-

ate because the duties arising from the contract were those Sverdrup owed to the Board, and the duties at issue in this action were those Sverdrup owed to Western.

The one exception to our analysis is the count in which Western alleged that it was the third-party beneficiary of the contract between the Board and Sverdrup. This count does arise out of contract, and while it does not appear that Western seriously pursued this claim, the trial court may, in its discretion, award Sverdrup fees attributable to its defense to this count. We remand to the trial court for this determination.

### OTHER ISSUES

■ Western also complains that the trial court improperly considered matters outside the pleadings in granting the motion to dismiss for failure to state a claim. Accepting this allegation as true for argument's sake, Western has failed to demonstrate how it was harmed by this. The formal judgment entered clearly reflects that the motion granted was for judgment on the pleadings for failure to state a claim upon which relief could be granted. We have reviewed this appeal on that basis. If the complaint stated a cause of action, Western would be entitled to relief. Because the complaint does not state a cause of action, we affirm regardless of the alleged impropriety.

The appellant also wants us to address a limitations issue. Because the trial court did not rule on this basis, our opinion would be purely advisory and we therefore decline to review this issue.

We affirm the judgment of the trial court as to the substantive issues and we remand for a redetermination of attorney's fees incurred below. Both parties have moved for attorney's fees incurred in pursuing this appeal. In our discretion, we deny both requests.

SHELLEY, P.J., and JACOBSON, J., concur.