[No. 55250–9. En Banc. July 20, 1989.]

ROBERT L. BRUCE, ET AL, *Respondents*, v. BYRNE–STEVENS
& ASSOCIATES ENGINEERS, INC.,
ET AL, *Petitioners*.

*Kane, Vandeberg, Hartinger & Walker,* by *Harold T. Hartinger,* for petitioners.

*Sinnitt & Sinnitt, P.S.,* by *Paul Sinnitt,* for respondents.

*Russell C. Love* on behalf of Washington Defense Trial Lawyers, amicus curiae for petitioners.

*Robert H. Whaley* and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association, amici curiae for respondents.

DORE, J.—We hold that an engineer who testified as an expert witness on behalf of respondents at a previous trial is entitled to immunity from suit based on his testimony.

## FACTS

Respondents Bruce and Smallwood own separate parcels of property on Clear Lake in Pierce County. In 1979 a neighbor, John Nagle, conducted excavation work on his property, resulting in subsidence in the soil of the Bruce and Smallwood properties. They sued Nagle and retained petitioner Byrne–Stevens & Associates Engineers, Inc. (Byrne–Stevens) to calculate and testify as to the cost of stabilizing the soil on their land. The principal of the firm, Patrick J. Byrne, testified at the trial that the cost of restoring lateral support would be $10,020 on the Bruce property and $11,020 on the Smallwood property. The respondents obtained a judgment against Nagle for damages of $10,020 to Bruce and $11,020 to Smallwood.

Bruce and Smallwood sued Byrne–Stevens and Byrne alleging that the cost of restoring lateral support later proved to be double the amount of Byrne's estimate at trial. They contend that Byrne was negligent in preparing his analysis and testimony and that, but for Byrne's low estimate of the cost of restoring lateral support, they would have obtained judgment against Nagle for the true cost of the restoration.

The trial court granted the defendants' motion to dismiss based on witness immunity. The Court of Appeals reversed. *Bruce v. Byrne–Stevens & Assocs. Eng'rs, Inc.,* 51 Wn. App. 199, 752 P.2d 949, *review granted,* 111 Wn.2d 1001 (1988). We reverse the Court of Appeals and dismiss the suit.

### Witnesses Are Absolutely Immune From Suit

■ As a general rule, witnesses in judicial proceedings are absolutely immune from suit based on their testimony.

> The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law. *Cutler* v. *Dixon,* 4 Co. Rep. 14b, 76 Eng. Rep. 886 (Q. B. 1585); *Anfield* v. *Feverhill,* 2 Bulst. 269, 80 Eng. Rep. 1113 (K. B. 1614); *Henderson* v. *Broomhead,* 4 H. & N. 569, 578, 157 Eng. Rep. 964, 968 (Ex. 1859); see *Dawkins* v. *Lord Rokeby,* 4 F. & F. 806, 833–834, 176 Eng. Rep. 800, 812 (C. P. 1866).

(Footnotes omitted.) *Briscoe v. LaHue,* 460 U.S. 325, 330–31, 75 L. Ed. 2d 96, 103 S. Ct. 1108 (1983). The rule is equally well established in American common law. *See Lawson v. Hicks,* 38 Ala. 279, 285–88 (1862); *Myers v. Hodges,* 53 Fla. 197, 208–10, 44 So. 357, 357–61 (1907); *Smith v. Howard,* 28 Iowa 51, 56–57 (1869); *Gardemal v. McWilliams,* 43 La. Ann. 454, 457–58, 9 So. 106, 108 (1891); *Burke v. Ryan,* 36 La. Ann. 951, 951–52 (1884); *McLaughlin v. Cowley,* 127 Mass. 316, 319–20 (1879); *Cooper v. Phipps,* 24 Or. 357, 363–64, 33 P. 985, 986–87 (1893); *Shadden v. McElwee,* 86 Tenn. 146, 149–54, 5 S.W. 602, 603–05 (1887); *Cooley v. Galyon,* 109 Tenn. 1, 13–14, 70 S.W. 607, 610 (1902); *Chambliss v. Blau,* 127 Ala. 86, 89–90, 28 So. 602, 603 (1900).

The purpose of the rule is to preserve the integrity of the judicial process by encouraging full and frank testimony.

> In the words of one 19th–century court, in damages suits against witnesses, "the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Calkins* v. *Sumner,* 13 Wis. 193, 197 (1860). A witness' apprehension of subsequent damages liability might induce two forms of self–censorship. First, witnesses might be reluctant to come forward to testify. See *Henderson* v. *Broomhead,* [4 H. & N. 569, 578–79] 157 Eng. Rep., at 968. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. See *Barnes* v. *McCrate,* 32 Me. 442, 446–447 (1851). Even within the constraints of the witness' oath there may be various ways to give an account or to state an opinion. These alternatives may be more or less detailed and may differ in emphasis and certainty. A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence.

*Briscoe,* at 332–33.

In addition to the benefits obtained by extending immunity, the rule also rests on the safeguards against false or inaccurate testimony which inhere in the judicial process itself. A witness' reliability is ensured by his oath, the hazard of cross examination and the threat of prosecution for perjury. *Briscoe,* at 332. *See Engelmohr v. Bache,* 66 Wn.2d 103, 401 P.2d 346 (witness immunity not applicable to statements made in administrative hearing which did not resemble a judicial proceeding), *cert. dismissed,* 382 U.S. 950 (1965). In light of these safeguards, the detriments of imposing civil liability on witnesses outweigh the benefits.

The scope of witness immunity is broad. Immunity has been extended to witnesses before grand juries. *Macko v. Byron,* 760 F.2d 95, 97 (6th Cir. 1985); *Kincaid v. Eberle,* 712 F.2d 1023 (7th Cir.), *cert. denied,* 464 U.S. 1018 (1983). Witnesses in other pretrial proceedings are also absolutely immune. *Holt v. Castaneda,* 832 F.2d 123, 125 (9th Cir. 1987); *Williams v. Hepting,* 844 F.2d 138 (3d Cir. 1988).

Guardians, therapists and attorneys who submit reports to family court are absolutely immune. *Myers v. Morris,* 810 F.2d 1437, 1466 (8th Cir.), *cert. denied,* 484 U.S. 828 (1987). Probation officers who allegedly include false statements in pretrial bond reports have been held immune. *Tripati v. United States Immigration & Naturalization Serv.,* 784 F.2d 345, 348 (10th Cir. 1986), *cert. denied,* 484 U.S. 1028 (1988).

The respondents and amicus curiae on behalf of Washington State Trial Lawyers Association have offered three reasons why the general rule of witness immunity should not apply: (a) the expert is retained and compensated by a party for his testimony; (b) witness immunity is limited to defamation cases; and, (c) witness immunity is limited to statements made at trial. None of these arguments has merit.

### PRIVATELY RETAINED AND COMPENSATED EXPERT WITNESSES ARE IMMUNE

The Washington case most on point here is *Bader v. State,* 43 Wn. App. 223, 716 P.2d 925 (1986). In *Bader,* Eastern State Hospital evaluated a criminal defendant, Morris Roseberry, for the purpose of determining whether he was competent to stand trial. Roseberry was diagnosed as paranoid schizophrenic and manic depressive, but was found competent to stand trial. Roseberry was acquitted and released, conditioned on his submitting to treatment. He later murdered a neighbor and the victim's estate sued Eastern State for negligence in its evaluation of Roseberry.

Division Three of the Court of Appeals held Eastern State immune from suit on grounds of judicial immunity. *Bader,* at 226. *Accord, Tobis v. State,* 52 Wn. App. 150, 758 P.2d 534 (1988); *Moses v. Parwatikar,* 813 F.2d 891, 892 (8th Cir. 1987); *Burkes v. Callion,* 433 F.2d 318, 319 (9th Cir. 1970); *Bartlett v. Weimer,* 268 F.2d 860 (7th Cir. 1959); *In re Scott Cy. Master Docket,* 618 F. Supp. 1534, 1575 (D. Minn. 1985); *Kravitz v. State,* 8 Cal. App. 3d 301, 87 Cal.

Rptr. 352 (1970); *Linder v. Foster,* 209 Minn. 43, 45, 295 N.W. 299 (1940).

The Court of Appeals found *Bader* distinguishable, arguing: "Such immunity certainly would not apply to an expert retained by a party to litigation, because such an expert does not act on the court's behalf." *Bruce,* 51 Wn. App. at 201 n.1. Reasoning along the same lines, the Court of Appeals held that the general rule of witness immunity should not apply here because:

> Byrne is a professional, with a pecuniary motive for testifying. He voluntarily undertook to render his expert opinion in the original action, knowing that the parties and the court would rely on that opinion. He was not merely a bystander who fortuitously came to have information relevant to the claim, nor was he subject to contempt of court if he refused to assume this undertaking.

*Bruce,* 51 Wn. App. at 201.

The fact that Byrne was retained and compensated by a party does not deprive him of witness immunity. The Court of Appeals assumed that participants in adversarial judicial proceedings derive their immunity from their relationship to the judge, who is himself immune from suit. In many instances, that is correct. *See Adkins v. Clark Cy.,* 105 Wn.2d 675, 717 P.2d 275 (1986) (immunity of bailiff). However, the rationale behind quasi–judicial immunity, as set out in *Briscoe,* sweeps more broadly. The purpose of granting immunity to participants in judicial proceedings is to preserve and enhance the judicial process. "The central focus of our analysis has been the nature of the judicial proceeding itself." *Briscoe,* 460 U.S. at 334. The various grants of immunity for judges and witnesses, as well as for prosecutors and bailiffs, are all particular applications of this central policy. They are best described as instances of a single immunity for participants in judicial proceedings.[1]

---

[1] Arizona courts use this terminology. *See, e.g., Western Technologies, Inc. v. Sverdrup & Parcel, Inc.,* 154 Ariz. 1, 4, 739 P.2d 1318, 1321 (Ct. App. 1986). The Arizona Supreme Court has written:

> The socially important interests promoted by the absolute privilege in this area include the fearless prosecution and defense of claims which leads to

The principles set forth in *Pierson* v. *Ray* [, 386 U.S. 547, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967)] to protect judges and in *Imbler* v. *Pachtman* [, 424 U.S. 409, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976)] to protect prosecutors also apply to witnesses, who perform a somewhat different function in the trial process but whose participation in bringing the litigation to a just—or possibly unjust—conclusion is equally indispensable.

*Briscoe v. LaHue,* 460 U.S. 325, 345–46, 75 L. Ed. 2d 96, 103 S. Ct. 1108 (1983). In the *Bader* case, Eastern State was immune, not because it partook of the judge's immunity, but because it took part in judicial proceedings.

In this light, it is immaterial that an expert witness is retained by a party rather than appointed by the court. The basic policy of ensuring frank and objective testimony obtains regardless of how the witness comes to court. This was recognized recently in *Kahn v. Burman,* 673 F. Supp. 210 (E.D. Mich. 1987) in which the court granted immunity to a medical doctor who was retained as an expert in a medical malpractice case and who allegedly made defaming statements in reports to the attorney investigating the case.

As a matter of policy, also, witness immunity should extend to reports prepared by both potential and retained expert witnesses. Justice Stevens reasoned in *Briscoe* that damage suits against witnesses must "yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." This policy of providing for reasonably unobstructed access to the relevant facts and issues mandates the extension of immunity to Dr. Burman for all statements that he made in his reports to Attorney Gray. The overriding concern for disclosure of pertinent and instructive expert opinions before and during medical malpractice actions is no less significant than the clearly–recognized need for all relevant factual evidence during the course of litigation.

(Citation omitted.) *Kahn,* at 213.

██ In addition, the Court of Appeals is simply wrong to say that an expert witness "does not act on the court's behalf." 51 Wn. App. at 201 n.1. While it may be that many

complete exposure of pertinent information for a tribunal's disposition. . . . The privilege protects judges, parties, lawyers, witnesses and jurors.
*Green Acres Trust v. London,* 141 Ariz. 609, 613, 688 P.2d 617 (1984).

expert witnesses are retained with the expectation that they will perform as "hired guns" for their employer, as a matter of law the expert serves the court. The admissibility and scope of the expert's testimony is a matter within the court's discretion. *Orion Corp. v. State,* 103 Wn.2d 441, 462, 693 P.2d 1369 (1985). That admissibility turns primarily on whether the expert's testimony will be of assistance to the finder of fact. ER 702. The court retains the discretion to question expert witnesses. ER 614(b). The mere fact that the expert is retained and compensated by a party does not change the fact that, as a witness, he is a participant in a judicial proceeding. It is that status on which witness immunity rests.

The Court of Appeals noted the fact that an expert witness is compensated for his testimony, but did not explain how that affects the basic rationale for witness immunity. Contrary to that court's conclusion, the economics of expert testimony dictate in favor of granting immunity to retained expert witnesses for at least two reasons. Both derive from the fundamental policy of ensuring frank and objective testimony, as stated in *Briscoe.*

First, unless expert witnesses are entitled to immunity, there will be a loss of objectivity in expert testimony generally. The threat of civil liability based on an inadequate final result in litigation would encourage experts to assert the most extreme position favorable to the party for whom they testify. It runs contrary to the fundamental reason for expert testimony, which is to assist the finder of fact in a matter which is beyond its capabilities. To the extent experts function as advocates rather than impartial guides, that fundamental policy is undermined.

Second, imposing civil liability on expert witnesses would discourage anyone who is not a full–time professional expert witness from testifying. Only professional witnesses will be in a position to carry insurance to guard against such liability. The threat of liability would discourage the 1–time expert—the university professor, for example—from

testifying. Such 1–time experts, however, can ordinarily be expected to approach their duty to the court with great objectivity and professionalism.

The main argument to the contrary is that the threat of liability would encourage experts to be more careful, resulting in more accurate, reliable testimony. While there is some merit to this contention, possible gains of this type have to be weighed against the threatened losses in objectivity described above. We draw that balance in favor of immunity. Civil liability is too blunt an instrument to achieve much of a gain in reliability in the arcane and complex calculations and judgments which expert witnesses are called upon to make. The threat of liability seems more likely to result in experts offering opinions motivated by litigants' interests rather than professional standards and in driving all but the full–time expert out of the courtroom.

In sum, the fact that an expert witness is retained by a party has no bearing on the underlying rationale of witness immunity. That basic rationale—ensuring objective, reliable testimony—dictates in favor of immunity for experts. As a policy matter, the economics of expert testimony generally also favor immunity as a means of ensuring that a wide cross section of impartial experts are not deterred from testifying by the threat of liability.

### Witness Immunity Is Not Limited to Defamation Cases

Amicus curiae on behalf of Washington State Trial Lawyers Association argues at length that the rule of witness immunity applies only to defamation actions. Amicus is incorrect.

First, the leading case on witness immunity, *Briscoe v. LaHue, supra,* is not a defamation case. In *Briscoe,* two criminal defendants sued police officers under 42 U.S.C. § 1983, alleging that the police officers' false testimony violated their civil rights. Amicus fails even to cite *Briscoe,* much less account for it.

■ Second, there is nothing in the policy rationale underlying witness immunity which would limit its applicability to defamation cases. Witness immunity is premised on the chilling effect of the threat of subsequent litigation. The threat of subsequent litigation is the same regardless of the theory on which that subsequent litigation is based.

Third, a rule limiting witness immunity to defamation cases would be easy to evade by recasting one's claim under other theories. The New Jersey court noted this fact over 30 years ago in holding that the immunity available in a defamation case is equally applicable to allegations of malicious prosecution and tortious interference.

> If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and *quasi*-judicial proceedings, is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.

*Rainier's Dairies v. Raritan Vly. Farms, Inc.,* 19 N.J. 552, 564, 117 A.2d 889 (1955). *See also Lone v. Brown,* 199 N.J. Super. 420, 429–30, 489 A.2d 1192 (1985); *Procacci v. Zacco,* 402 So. 2d 425, 427 (Fla. Dist. Ct. App. 1981).

Fourth, as the above citations suggest, there are a large number of cases in a wide range of jurisdictions in which witness immunity has been granted to bar causes of action other than defamation. *See Brody v. Montalbano,* 87 Cal. App. 3d 725, 738, 151 Cal. Rptr. 206, 215 (1978) (malicious prosecution, conspiracy to interfere with contract, conspiracy to intentionally inflict emotional distress); *O'Barr v. Feist,* 292 Ala. 440, 296 So. 2d 152 (1974) (negligence, false imprisonment); *Bencomo v. Morgan,* 210 So. 2d 236 (Fla. Dist. Ct. App. 1968) (intentional infliction of emotional distress); *Snyder v. Faget,* 295 Ala. 197, 326 So. 2d 113 (1976) (negligence); *Dunbar v. Greenlaw,* 152 Me. 270, 128 A.2d 218 (1956) (negligence); *Fisher v. Payne,* 93 Fla. 1085, 113 So. 378 (1927) (malicious prosecution); *Hurley v. Towne,* 155 Me. 433, 156 A.2d 377 (1959) (false imprisonment); *Dabkowski v. Davis,* 364 Mich. 429, 111 N.W.2d 68 (1961) (false imprisonment, assault and battery).

Amicus cites one case to the contrary. *James v. Brown,* 637 S.W.2d 914 (Tex. 1982). *James* arose out of a commitment proceeding against Marguerite James in which three psychiatrists filed reports with the probate court stating that Mrs. James was mentally ill and likely to cause injury. Mrs. James later was freed on a writ of habeas corpus and brought suit against the psychiatrists for negligence, false imprisonment and malicious prosecution. The trial court dismissed the action, relying on *Clark v. Grigson,* 579 S.W.2d 263 (Tex. Civ. App. 1978).[2] The Texas court repudiated *Clark* in *James,* limiting witness immunity to defamation actions.

> While the doctors' communications to the court of their diagnoses of Mrs. James' mental condition, regardless of how negligently made, cannot serve as the basis for a defamation action, the diagnoses themselves may be actionable on other grounds. In this regard we disapprove the language of *Clark v. Grigson* . . . inasmuch as it extended to psychiatrists testifying in mental health proceedings a blanket immunity from all civil liability. The unavailability of a defamation action does not preclude a plaintiff from pursuing other remedies at law. Mrs. James is not prevented from recovering from the doctors for negligent misdiagnosis–medical malpractice merely because their diagnoses were later communicated to a court in the due course of judicial proceedings.

(Citations omitted.) *James,* at 917–18.

We see no reason to follow the Texas court's holding in *James.* The opinion is contrary to the majority rule. As indicated above, a majority of courts have held that psychiatrists are entitled to witness immunity where their diagnoses are offered in the course of judicial proceedings.

---

[2]Clark, a criminal defendant, retained a psychiatrist, Grigson, to examine him for purposes of advancing an insanity plea. Clark did not advance the plea and was convicted. Grigson was called by the State at the sentencing phase. Clark later brought suit against Grigson alleging that the psychiatrist was negligent in his diagnosis and related testimony. The appeals court held that Grigson was entitled to witness immunity:

> Consequently, we hold that no civil liability exists on the part of an expert witness who forms an opinion and states that opinion in the course of his testimony in a judicial proceeding, even though he may have been negligent in the process.

*Clark,* 579 S.W.2d at 265.

*James* discusses neither those cases nor their logic, failing to consider that the policies which justify witness immunity in defamation cases apply equally to other subsequent suits. Most significantly, *James* turns on a specific Texas statute which preempted the common law rule of immunity. Tex. Rev. Civ. Stat. Ann. art. 5547–18 (Vernon supp. 1989) grants immunity to persons who "without negligence" perform examinations and other acts required by Texas' mental health code. The Texas court reasoned that: "The plain implication of art. 5547–18 is that persons acting . . . negligently in connection with mental health proceedings are not free from liability." 637 S.W.2d at 918. Therefore, *James* is distinguishable from the present case, where there is no such preempting statute.

We reject the argument that witness immunity is restricted to defamation cases.

### IMMUNITY EXTENDS TO ACTIONS FORMING THE BASIS OF THE TESTIMONY

Respondents and amicus argue that the mere fact that Byrne testified on the basis of his engineering work should not insulate him from liability for negligence in the performance of that work. Put another way, it has been argued that Bruce and Smallwood are suing for negligent engineering, not for negligent testifying.

We disagree. Suppose Bruce and Smallwood relied on Byrne–Stevens' engineering work in restoring their property, that the restoration was not successful and that Bruce and Smallwood sued for negligence, claiming as damages the cost of new engineering studies and further work on the land. In that case, it could be said that Bruce and Smallwood were suing Byrne–Stevens for negligent engineering.

Here, however, the damage Bruce and Smallwood complain of is an inadequate recovery in litigation. They do not allege that Byrne–Stevens' engineering work would not enable a contractor to restore their land; they allege that the firm's estimate of the cost of such work was too low. However, that low estimate would not have damaged Bruce

and Smallwood *but for* the fact that they relied on it in litigation. In short, it simply is not the case that the defendants were sued for negligent engineering. Bruce and Smallwood complain of negligence in providing expert testimony.

Furthermore, the "negligent engineering" argument is inconsistent with witness immunity even in those cases in which respondents and amicus concede it is justified. For example, *Bader* represents the majority rule that psychiatrists and physicians are immune from suit based on diagnoses rendered in the course of judicial proceedings. *Bader v. State,* 43 Wn. App. 223, 716 P.2d 925 (1986). The cases so holding include claims for negligence, *Snyder v. Faget, supra; Dunbar v. Greenlaw, supra,* as well as for intentional infliction of emotional distress, false imprisonment and defamation. In each of these cases, one could argue that the wrong complained of was the erroneous diagnosis, rather than the testimony or report to the court. However, that argument has rarely been made and has never prevailed.

There is a good reason for this. Witness immunity must extend to the basis of the witness' testimony, or the policies underlying such immunity would be undermined. An expert's courtroom testimony is the last act in a long, complex process of evaluation and consultation with the litigant. There is no way to distinguish the testimony from the acts and communications on which it is based. Unless the whole, integral enterprise falls within the scope of immunity, the chilling effect of threatened litigation will result in the adverse effects described above, regardless of the immunity shielding the courtroom testimony.

The New Jersey court recognized this long ago in *Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n,* 68 N.J. Super. 85, 172 A.2d 22 (1961). Middlesex sued Carteret over progress payments on a sewage treatment plant. Carteret retained Philip B. Streander as a consulting engineer. Middlesex subsequently added Streander as a defendant, alleging tortious interference

based on Streander's negative reports. The trial court dismissed the suit against Streander on grounds of witness immunity. Middlesex appealed and argued that Streander's report to Carteret:

> was not a step in a judicial proceeding and it afforded those harmed by it none of the protection which a judicial proceeding affords in that the report was not under oath; its author was not subject to prosecution for perjury; and the truth or falsity of its contents was not subject to the "searching light" of cross–examination.

*Middlesex,* 68 N.J. Super. at 90. Nevertheless, the court held that Streander did fall within the broad scope of immunity for participants in judicial proceedings:

> The privilege or immunity is not limited to what a person may say under oath while on the witness stand. It extends to statements or communications in connection with a judicial proceeding. . . .
>
> . . .
> If this were not so, every expert who acts as a consultant for a client with reference to proposed or actual litigation, and thereafter appears as an expert witness, would be liable to suit at the hands of his client's adversary on the theory that while the expert's testimony was privileged, his preliminary conferences with and reports to his client were not, and could form the basis of a suit for tortious interference.

*Middlesex,* 68 N.J. Super. at 92. *See also Western Technologies, Inc. v. Sverdrup & Parcel, Inc.,* 154 Ariz. 1, 739 P.2d 1318 (Ct. App. 1986); *Adams v. Peck,* 43 Md. App. 168, 403 A.2d 840 (1979).

█ In sum, the immunity of expert witnesses extends not only to their testimony, but also to acts and communications which occur in connection with the preparation of that testimony. Any other rule would be unrealistically narrow, would not reflect the realities of litigation and would undermine the gains in forthrightness on which the rule of witness immunity rests.

Respondents and amicus argue that Byrne–Stevens should not be shielded from liability merely because its calculations were later used in court. If the issue is stated that way, we agree; but that is not the issue before us. We do not hold that any professional negligence is immunized

whenever an expert later relies on it in court. In accord with existing law, we hold only that absolute immunity extends to acts and statements of experts which arise in the course of or preliminary to judicial proceedings.

It may be helpful to contrast this case with our holding in *Twelker v. Shannon & Wilson, Inc.,* 88 Wn.2d 473, 564 P.2d 1131 (1977). Twelker, a soils engineer, was retained to evaluate the risk of subsidence on certain property for the insurer of a contractor who had been retained to perform work there. Following a landslide, the contractor's insurer, fearing litigation, hired Shannon & Wilson to prepare a report on the same property. That report allegedly defamed Twelker. Twelker sued and Shannon & Wilson asserted absolute immunity based on the fact that its report was used in a subsequent lawsuit against Twelker and the contractor. We refused to grant absolute witness immunity to Shannon & Wilson because the statements at issue were uttered before the initiation of judicial proceedings. We cited *Middlesex* with approval and distinguished it on the ground that, in the New Jersey case, judicial proceedings were already underway when the tortious conduct allegedly took place.

> The extraordinary breadth of absolute privilege seems to us to require some compelling public policy justification for its existence. Where a lawsuit has been filed, the court in *Middlesex* found the need for uninhibited preliminary conferences and reports sufficient to establish such a justification. . . . [W]e decline to apply the absolute privilege accorded statements made in the course of or preliminary to judicial proceedings to the circumstances of this case.

*Twelker,* at 478.

The present case is clearly more like *Middlesex* than *Twelker.* Byrne–Stevens was hired specifically for litigation purposes. As we have explained above, the policies which justify witness immunity apply here, and Byrne–Stevens is entitled to "the absolute privilege accorded statements made in the course of or preliminary to judicial proceedings . . ." *Twelker,* at 478. Byrne–Stevens' background work,

which formed the basis of Byrne's courtroom testimony, therefore falls within the scope of the absolute privilege.

Since immunity must extend to the basis of the witness' testimony, Byrne–Stevens cannot be held liable for negligence in engineering in disregard of the fact that that work formed the basis of its principal's courtroom testimony.

### CONCLUSION

Byrne–Stevens and Byrne are immune from suit under the general rule of witness immunity. We therefore reverse the Court of Appeals and reinstate the trial court's order of dismissal.

DURHAM and SMITH, JJ., and QUINN, J. Pro Tem., concur. ANDERSEN, J., concurs in the result.

PEARSON, J.—I dissent. The question in this case is not whether an expert witness is immune from subsequent suit for defamatory statements made in a court of law. That question is well settled. Rather, today we are asked whether a professional's act of malpractice outside the courtroom is somehow immunized by the subsequent articulation of that negligently formed opinion in a judicial proceeding. Neither the law of absolute immunity nor sound public policy dictates the result reached by the majority. I would hold that a client's action for malpractice is not barred by the defense of absolute immunity merely because the professional subsequently publishes his or her opinion in a court of law at the client's request. Accordingly, I would affirm the unanimous decision of the Court of Appeals.

The majority properly states the common law rule that a witness is absolutely immune from suit for *defamatory statements* uttered in a judicial proceeding. *McClure v. Stretch*, 20 Wn.2d 460, 147 P.2d 935 (1944); *Johnston v. Schlarb*, 7 Wn.2d 528, 110 P.2d 190, 134 A.L.R. 474 (1941). Unfortunately, with a broad cite to the general rule of immunity for *defamation,* and with no legal authority for the present proposition, the majority extends the rule to shield otherwise actionable professional malpractice.

While this court has never ruled on this issue, other jurisdictions considering the question have not allowed the doctrine of immunity to shield negligent experts. In *James v. Brown,* 637 S.W.2d 914 (Tex. 1982), the court affirmed the dismissal of a libel action against three doctors who had previously testified against the plaintiff in a competency proceeding. However, the court reversed the dismissal of the plaintiff's cause of action based upon the doctors' acts of malpractice in negligently assessing the plaintiff's mental condition:

> While the doctors' communications to the court of their diagnoses of Mrs. James' mental condition, regardless of how negligently made, cannot serve as the basis for a defamation action, the diagnoses themselves may be actionable on other grounds. . . . The unavailability of a defamation action does not preclude a plaintiff from pursuing other remedies at law. . . . Mrs. James is not prevented from recovering from the doctors for negligent misdiagnosis–medical malpractice merely because their diagnoses were later communicated to a court in the due course of judicial proceedings.

*James v. Brown,* 637 S.W.2d at 917–18.

In *Steck v. Sakowitz, Inc.,* 659 S.W.2d 91 (Tex. Ct. App. 1983), *rev'd on other grounds,* 669 S.W.2d 105 (Tex. 1984), while dismissing the plaintiff's libel cause of action, the court permitted the plaintiff to proceed on her claim for tortious interference with her employment relationship, even though that cause of action arose out of the same allegedly libelous publication. In essence, merely because a defamation action is precluded by immunity, the rule does not sweep so broadly as to extinguish all causes of action.

Finally, in *Levine v. Wiss & Co.,* 97 N.J. 242, 478 A.2d 397 (1984), the court held immunity was not available to shield an accountant's malpractice, even though the professional was hired to prepare an appraisal for a judicial proceeding:

> [Immunity] should not be available to shield from liability for negligence appraisers or other experts performing limited functions, as part of their regular professional responsibilities, in the context of judicial proceedings. . . . To do so would not only stretch beyond social need and utility the policy that encourages arbitration, but would also create an additional

> legal immunity—a consequence contrary to our prevailing phi-
> losophy and practice that strive to provide redress for wrongful
> injury.

*Levine v. Wiss & Co.,* 97 N.J. at 251; *accord,* Annot.,
*Accountant's Malpractice Liability to Client,* 92 A.L.R.3d
396, 409 (1979).

The case law cited by the majority simply does not sup-
port the extension of immunity to the situation at bench.
The Court of Appeals in considering the question properly
distinguished *Bader v. State,* 43 Wn. App. 223, 716 P.2d
925 (1986). That case was not a malpractice action brought
against the party's own expert witness. Rather, a victim,
who was not a party to the first action brought suit, not
against his own expert but against an expert *hired by the
court.* Accordingly, immunity was appropriate since, as will
be discussed, the rigors of cross examination protect against
negligently formed opinions *except* as to the party hiring
the expert. Additionally, in *Bader* there is no privity
between the victim and the expert witness.

The majority holds that the policies underlying witness
immunity for defamation actions apply equally to an
expert's act of malpractice. In reality, a distinction must be
drawn between defamation and acts of professional mal-
practice subsequently published in the courtroom. Despite
the professed reliance upon the policies underlying immu-
nity, in the end the majority holds that immunity stems
merely from taking "part in judicial proceedings." Majority
opinion, at 129. A simple analogy demonstrates the invalid-
ity of this holding: There is no question that an attorney's
defamatory statement during a judicial proceeding is
shielded from subsequent attack under the doctrine of
immunity. However, the same attorney remains liable to his
or her own client for any acts of malpractice that occur in
that very forum. Accordingly, from this day forward under
the majority's new rule, professionals, particularly attor-
neys, are provided with a new defense in malpractice
actions.

The basis for the majority's extension of the rule of immunity is the claimed desire to promote "full and frank testimony." Majority opinion, at 126. A careful analysis of an expert witness's role reveals that such a rule provides no such impetus. Again, distinctions must be drawn between a lay witness and a party's hired expert. Eyewitnesses, while possessing knowledge essential to the action, possess no professional expertise and have no incentive to testify. Faced with the prospect of civil liability for defamation, an eyewitness's unavailability might severely hamper the fact–finding function of the court. Such is not the case with hired experts. First, an expert does not possess unique knowledge. Accordingly, even if malpractice liability intimidates some experts, others will rise to fill the need. Second, the majority's argument assumes that these professionals are not otherwise subject to liability. In point of fact, it is merely fortuitous whether an expert is hired to prepare his or her opinion for testimony, or merely for purposes of an amicable settlement. Only under the majority's new rule would a different result attach, depending on a circumstance outside the expert's control.

Additionally, the majority argues, "the hazard of cross examination and the threat of prosecution for perjury" remove the justification for malpractice liability. Majority opinion, at 126. Such an analysis misses the mark. The threat of perjury and the rigors of cross examination only protect against intentional misstatements and those negligent statements the *opponent* wishes to expose. Thus, these safeguards, in addition to other considerations, do justify the rule of immunity for eyewitnesses. For eyewitnesses are subject to attack from both sides in those areas where their testimony discredits either party's theory. In addition, when an expert overvalues his client's claim, the opponent of course will attempt to discredit the testimony. However, in an instance where an expert negligently reaches his opinion and undervalues his client's claim, as in this case, if cross examination bears that out, not only has

the expert committed malpractice, but arguably the opponent's attorney has as well.

In *Jarrard v. Seifert*, 22 Wn. App. 476, 479, 591 P.2d 809 (1979), the court stated:

> The defendants were employed as professional engineers and land surveyors because of their superior knowledge in that field. The plaintiffs were entitled to rely on that superior knowledge and to expect that such professionals would fulfill the duty of reasonable diligence, skill, and ability.

Today, the majority holds that such a rule is inapplicable to a negligent engineer who prepared his opinion anticipating its use as testimony at trial. However, in the case at hand, had the engineer merely been hired for the purpose of obtaining a settlement with the tortfeasor, the plaintiff's subsequent malpractice action against the engineer would not be barred. I fail to grasp any basis upon which the majority can rightfully distinguish the two situations. Both the law and common sense do not support such a judicially created rule. I would hold that the doctrine of absolute immunity does not bar the client's action against his or her own expert for a negligently rendered professional opinion that is subsequently published in a judicial proceeding. Accordingly, I dissent.

UTTER, BRACHTENBACH, and DOLLIVER, JJ., concur with PEARSON, J.