**Aizenhawar (Aizen) J. MARROGI, Plaintiff–Appellant,**

v.

**Ray HOWARD and Ray Howard & Associates, Inc., Defendants– Appellees.**

No. 00–30786.

United States Court of Appeals, Fifth Circuit.

April 12, 2001.

Jeffrey Collin Vaughan (argued), Breazeale, Sachse & Wilson, New Orleans, LA, for Plaintiff–Appellant.

Kenneth B. Wright (argued), Datz, Jacobson, Lembcke & Wright, Jacksonville, FL, Anthony Paul Dunbar, New Orleans, LA, for Defendants–Appellees.

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF LOUISIANA, PURSUANT TO RULE XII OF THE LOUISIANA SUPREME COURT TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:

I. STYLE OF THE CASE

■ The style of the case in which certification is made is Aizenhawar (Aizen) J.

Marrogi, Plaintiff–Appellant, versus Ray Howard and Ray Howard & Associates, Inc., Defendants–Appellees, in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Eastern District of Louisiana. This case involves a determinative question of state law, and federal jurisdiction is based solely on diversity of citizenship.[1]

## II. STATEMENT OF THE CASE

### A. Prior Litigation

In 1997, Plaintiff–Appellant Aizenhawar (Aizen) J. Marrogi ("Dr. Marrogi") brought suit in Louisiana state court (the "prior litigation") against his former employer, the Tulane University School of Medicine ("Tulane"), seeking monies allegedly owed as a result of Tulane's underbilling for his services. Dr. Marrogi engaged Defendants–Appellees Ray Howard and Ray Howard Associates (collectively, "Howard"), who held themselves out as experts in medical billing and coding, to provide pretrial analysis and litigation support in connection with the prior litigation. Howard, a Florida resident, entered into a contract in which he agreed to perform medical billing and code services with respect to the prior litigation. The services required under that contract included (1) reviewing pathology reports that would be sent to Howard from Louisiana, (2) submitting reports and affidavits to Dr. Marrogi's Louisiana attorney for use in preparing for and prosecuting the prior litigation, (3) testifying in depositions, and (4) testifying in hearings and at trial in Louisiana.

At the outset of the prior litigation, the state court ruled that Dr. Marrogi could obtain medical records of only one fiscal year from the five-year period during which he was employed by Tulane unless he could establish a billing discrepancy. After reviewing Tulane's records together with a billing and coding schedule from one fiscal year, Howard provided Dr. Marrogi with an affidavit containing Howard's opinion that Tulane should have billed $523,485.00 for Dr. Marrogi's services during the subject fiscal year. Tulane had actually billed less than $250,000.00 for these services.

At the hearing on Dr. Marrogi's motion to compel Tulane to produce the other medical records on the basis of this discrepancy, Tulane pointed to numerous mathematical errors in Howard's reports as well as errors in his assignment of prices to coded services. In light of these errors, the state court ordered that Howard be deposed prior to the court's consideration of Dr. Marrogi's motion to compel.

At the request of Dr. Marrogi, Howard prepared and submitted a revised report which reduced to $392,740.00 the amount that, in Howard's opinion, Tulane should have billed for Dr. Marrogi's services. Dr. Marrogi, in turn, furnished a copy of Howard's revised opinion to Tulane. Under questioning at his ensuing deposition, Howard was forced to admit to having made additional pricing and coding errors. During a break in the deposition, Dr. Marrogi's attorney was informed by Howard that he was chagrined by the numerous errors he had made and that he would neither participate in the remainder of his scheduled deposition nor provide any of the other litigation support that he had contracted to furnish.

Tulane then filed a motion for summary judgment, seeking dismissal of Dr. Marro-

---

1. The district court expressly found Defendants–Appellees subject to jurisdiction *in personam,* and they have not appealed or cross-appealed that ruling. Unlike subject matter jurisdiction, personal jurisdiction can be acquiesced in or waived.

gi's suit. In support of its motion, Tulane submitted Howard's deposition testimony as evidence that Dr. Marrogi was not able to produce any credible summary judgment evidence of underbilling. The state court granted the motion for summary judgment and dismissed the prior litigation.

## B. Current Litigation

Dr. Marrogi then initiated the instant action (the "current litigation") by filing suit against Howard in the Eastern District of Louisiana, alleging injury and damage resulting from Howard's deficient performance in the prior litigation. Howard filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of Dr. Marrogi's action for failure to state a claim on which relief could be granted. The gravamen of the motion was Louisiana's witness immunity doctrine.

Noting that no Louisiana court had ever addressed the issue of witness immunity in the context of a party suing his own retained expert witness[2] over the expert's performance of litigation support services in connection with prior litigation, the district court concluded that under Louisiana law Howard is entitled to absolute immunity like any other witness and accordingly dismissed Dr. Marrogi's action with prejudice. In so doing, the district court announced that it was "unable and unwilling to be the first court to recognize such a modification of Louisiana law."

The district court did, however, observe that Dr. Marrogi's position on the issue of retained expert witness immunity was "fully supported" by *LLMD of Michigan, Inc. v. Jackson–Cross Co.*,[3] in which the Supreme Court of Pennsylvania recognized an exception to the general rule of witness immunity for retained expert witnesses from suit by the party who retained them.[4] Although the trial court here agreed that "there is a certain logic to the rationale adopted by the *LLMD* court," it also expressed concern that making an exception to the general rule of witness immunity for retained expert witnesses might entail "a multitude of evidentiary and practical problems in its application." Nevertheless, the district court refrained from engaging in any extended discussion of the merits of the issue, choosing instead to ground its refusal to recognize an excep-

2. The term "retained expert witness" refers to a witness retained by a party to litigation for the purposes of furnishing pretrial or trial expertise or both in assisting the retaining party or counsel in preparing and presenting the party's case. It is interchangeable in this context with the more commonly used term-of-art "friendly expert witness." *See, e.g.,* Mark Hansen, *Experts are Liable, Too: Client Suites Against "Friendly Experts" Multiplying, Succeeding,* 86 A.B.A. J. 17 (Nov. 2000) ("The law has been moving in the direction of holding *friendly experts* liable for their professional errors for the past 10 or 15 years[.]") (internal quotation marks omitted) (emphasis added); *LLMD of Michigan, Inc. v. Jackson–Cross Co.,* 559 Pa. 297, 740 A.2d 186, 190 n. 5 (1999) (referring to "so-called '*friendly experts*,' who are hired by a party to provide professional services in connection with litigation") (emphasis added).

3. 559 Pa. 297, 740 A.2d 186 (1999).

4. *Id.* at 191; *accord Murphy v. Mathews,* 841 S.W.2d 671 (Mo.1992); *Mattco Forge, Inc. v. Arthur Young & Co.,* 5 Cal.App.4th 392, 6 Cal.Rptr.2d 781 (1992), *review denied* (July 9, 1992); *see also Levine v. Wiss & Co.,* 97 N.J. 242, 478 A.2d 397 (1984) (holding that witness immunity "should not be available to shield from liability ... experts performing limited functions, as part of their regular professional responsibilities, in the context of judicial proceedings" even when the experts are court-appointed); *but see Bruce v. Byrne–Stevens & Associates Engineers, Inc.,* 113 Wash.2d 123, 776 P.2d 666 (1989) (affirming absolute witness immunity for an expert witness from liability to the party who retained the witness).

tion to the general rule of witness immunity in the fact that "this exception ... has not been recognized in any other reported opinion by any court applying Louisiana law."

As this appeal turns on an important issue of first impression under Louisiana law, we conclude that the question presented is most properly addressed to the Supreme Court of Louisiana and the Honorable Justices thereof.

## III. BACKGROUND[5]

Louisiana courts "have long recognized that there is absolute immunity from civil liability for testimony given by a non-party witness in a judicial proceeding."[6] Dr. Marrogi does not dispute either that (1) the policy considerations underlying witness immunity, such as the promotion of truthful and unfettered testimony and the discouragement of vexatious litigation, or (2) the contexts in which witness immunity has been extended, are generally sound. Instead, Dr. Marrogi argues that these policy considerations do not mandate the extension of witness immunity to an expert witness sued by the party who had retained the expert for litigation support services and then claims that the retained expert damaged the party in prior litigation by deficiently performing professional duties assumed by that expert. Indeed, Dr. Marrogi contends that the judicial process will only be enhanced by an exception to the general rule of witness immunity that would effectively hold retained expert witnesses accountable for the performance of their duties to the same degree as attorneys, doctors, accountants, and other professionals.

Dr. Marrogi concedes, as he must, that no Louisiana court (or any other court applying Louisiana law) has addressed much less decided whether the general principle of witness immunity admits of an exception for the retained expert witness who is alleged to have performed litigation support duties deficiently to the detriment of the party who retained that expert. There are, however, strong arguments of law and policy supporting proponents of both sides of this issue.[7]

---

5. We briefly discuss the background legal and policy issues involved in this appeal solely to provide the context of our decision to certify the question presented, without implying any opinion whatsoever on their merits or applicability.

6. *Genovese v. Usner*, 602 So.2d 1084, 1086 n. 5 (La.App. 1st Cir.1992); *accord Oakes v. Walther*, 179 La. 365, 154 So. 26, 27 (1934); *Knapper v. Connick*, 681 So.2d 944, 946 (La. 1996).

7. *Compare* Eric G. Jensen, Comment, *When "Hired Guns" Backfire: The Witness Immunity Doctrine and the Negligent Expert Witness*, 62 UMKC L. Rev. 185 (1993) (arguing that "expert witnesses deserve to have any loss caused by their negligence fall upon their shoulders" because "expert witnesses are paid advocates who voluntarily assume a professional duty for direct monetary benefit" and "should not be allowed to have the advantages of large support networks, advertisements proclaiming their professionalism, and the court's stamp of expertise without assuming some burden for their own negligence should something go wrong") with Adam J. Myers, III, *Misapplication of the Attorney Malpractice Paradigm to Litigation Services: "Suit within a Suit" Shortcomings Compel Witness Immunity for Experts*, 25 Pepp. L. Rev. 1 (1997) (attacking the rationale used to justify exempting retained experts from the general rule of witness immunity by arguing that, *inter alia*, "experts should not become scapegoats for our country's current overzealous litigiousness" and that the existence of other incentives for experts to adhere to professional standards, the likelihood of expert opinions "being motivated by the client's interests rather than by applicable professional standards," and the danger of seemingly endless litigation justify applying witness immunity to retained expert witnesses).

## IV. NEED FOR CERTIFICATION

The resolution of this appeal turns entirely on the answer to the threshold question whether Louisiana, given its unswerving historical allegiance to the policy of witness immunity,[8] would recognize an exception to the general rule for retained experts. This question implicates difficult tradeoffs between fairness to individual litigants, on one hand, and prudential concerns about vexatious and excessive litigation, on the other hand. As this case raises an important issue of first impression under Louisiana law, we respectfully certify that question to the Supreme Court of Louisiana.

## V. QUESTION CERTIFIED

Under Louisiana law, does witness immunity bar a claim against a retained expert witness, asserted by a party who in prior litigation retained that expert, which claim arises from the expert's allegedly deficient performance of his duties to provide litigation services, such as the formulation of opinions and recommendations, and to give opinion testimony before or during trial?

## VI. CONCLUSION

We disclaim any intention or desire that the Supreme Court of Louisiana confine its reply to the precise form or scope of the question certified. The answer provided by the Supreme Court of Louisiana will determine the issue presented to this court in the captioned appeal: If an exception to witness immunity is recognized for retained expert witnesses, the case will be remanded to the federal district court for further proceedings consistent with that ruling; if no such exception is admitted, the district court's dismissal with prejudice will be affirmed.

8. Dr. Marrogi can cite only one Louisiana case, *Goldstein v. Serio*, 496 So.2d 412 (La.Ct. App.1986), *writ denied*, 501 So.2d 208, 209 (La.1987), which holds that absolute witness immunity does not serve as a complete defense. In *Goldstein*, the court concluded that witness immunity is only a defense to the extent that it defeats the elements of a claim. *Id.* at 415.